Harry H. **WALLACE** and **Elizabeth Snyder Wallace**, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 81–1376.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1981.

Decided Feb. 5, 1982.

Rehearing and Rehearing En Banc Denied April 29, 1982.

---

Thomas Hylden, Washington, D. C. (C. William Tayler, Sachs, Greenbaum & Tayler, Washington, D. C., on brief), for appellants.

Mary Ann Murphy, Washington, D. C. (Jeffrey Axelrad, U. S. Dept. of Justice, Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., J. Frederick Motz, U. S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, and PHILLIPS and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Harry Wallace and his wife, Elizabeth, brought this action in the United States District Court for the District of Maryland under the Swine Flu Act of 1976, 42 U.S.C. § 247b, to recover for personal injuries and damages as a result of a swine flu inoculation administered to Harry Wallace. The district court dismissed the suit on the ground that there was a substantial question whether the Wallaces' sole remedy was under the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8101 *et seq.* The court reasoned that FECA provides an exclusive remedy for federal employees alleging a work-related injury; that the Swine Flu Act specifically provides that no action can be brought against the government when another statute provides an exclusive remedy; and that whenever there is a substantial question of FECA coverage, the federal employee must file a FECA claim and be denied benefits before bringing a suit in federal court.

On appeal, the Wallaces argue that Harry Wallace's injuries were not work-related and that no substantial question was raised as to whether his injuries were compensable under FECA. The Wallaces also argue that FECA cannot provide the exclusive remedy

in this case because they allege that Harry Wallace's injuries were caused by the acts or omissions of program participants (such as private manufacturers of the vaccine) as well as the acts or omissions of the government, and that the government is liable only as a substitute defendant for the program participants under the provisions of the Swine Flu Act.

We agree with both positions asserted by the Wallaces and reverse the district court's dismissal of this case. Because we find error in the district court's holding on the first two grounds advocated by the Wallaces, we decline to rule on their other arguments.

## I.

Harry Wallace was a Hydrofoil System Planning and Acquisition Manager at the David W. Taylor Naval Ship Research and Development Center at Bethesda, Maryland, from November 1973 to November 1976. On November 23, 1976, during normal working hours, he was given a flu shot in a naval building adjacent to the one where he worked. Wallace was not performing any job-related duties when he received his shot, was not required to receive the vaccine as a condition of employment or for any other reason, and could have taken the shot elsewhere.

As a result of the inoculation, Harry Wallace contracted Guillain-Barre Syndrome. He has incurred substantial medical expenses ($28,649.65), lost wages ($6,500.00), and still suffers from a variety of physical and emotional problems, including impotence. He filed an administrative claim with the Public Health Service on June 15, 1978, which was denied by the Service on November 2, 1978, on the ground that his exclusive remedy was under FECA. In March 1979, Wallace and his wife, Elizabeth, filed an action under the Swine Flu Act of 1976, 42 U.S.C. § 247b(j)–(*l*), in the United States District Court for the District of Columbia, alleging negligence, breach of warranty and strict liability on the part of the United States and the program participants. The case was consolidated with oth-

er swine flu cases for pretrial proceedings in *In re Swine Flu Immunization Products Liability Litigation*, 446 F.Supp. 244 (Jud. Pan.Multi.Lit.1978) (Judge Gesell, presiding).

In this phase of the litigation, Judge Gesell ruled that federal employee plaintiffs such as the Wallaces may proceed with swine flu claims under the Swine Flu Act without filing under FECA if the injury is "clearly not compensable" under FECA or if they seek recovery from program participants other than the United States. With respect to this case, Judge Gesell denied the government's motion to dismiss the case because of Wallace's purported eligibility under FECA and denied the Wallaces' motion for partial summary judgment as to the government's FECA defense.

On July 25, 1980, pursuant to stipulation by the parties, the case was transferred to the United States District Court for the District of Maryland for local discovery and trial. After a cut-off date for discovery (April 1, 1981), filing date for pre-trial memoranda (April 20, 1981), and a trial date (April 27, 1981) were established, the Wallaces commenced discovery by filing interrogatories and requests for admissions on January 21, 1981. Because the government failed to respond to these discovery requests, the Wallaces sought an order compelling answers to interrogatories and an expedited hearing on the issue. On March 7, 1981, however, they also had requested a preliminary hearing on the issue whether the Wallaces were required to file and be denied a claim for FECA benefits before pursuing this claim under the Swine Flu Act in federal court.

On April 3, 1981, the district court dismissed the case on the ground that there was a substantial question whether Wallace's injuries were compensable under FECA and that the Wallaces' suit against the government and other program participants was precluded pending a determination of coverage under FECA. Apparently, the court made the ruling even though there were no pending motions by the government for dismissal or summary judgment.

## II.

This appeal places before us the difficult task of construing certain statutory language, some of which was considered and passed by a hurried Congress.

### A.

In the spring of 1976 Congress appropriated money at the urging of President Ford to establish a Swine Flu Vaccination Program, Pub.L.No.94–266, 90 Stat. 362. The program was begun in light of reports from the medical community that there was a high risk of a dangerous flu epidemic[1] during the winter of 1976–77 if a large scale vaccination program was not undertaken. The program ran into problems, however, when the vaccine manufacturers' insurance companies refused to insure them from claims by persons alleging injury from the vaccine because of the risk of strict products liability and the possibility of having to defend a multitude of meritless suits. Without insurance protection the vaccine manufacturers balked at continuing with the program.

After considering other plans, Congress and the insurance industry agreed on a program of substituted liability and passed the bill into law one week after the proposal had been introduced.[2] Under the Act, the Department of Health, Education and Welfare was to establish and coordinate the program by purchasing the vaccine from the manufacturers and providing it to state and federal authorities who would administer the vaccinations to the public at no charge.

Special provisions were included to address the manufacturers' and insurers' dual concerns of strict products liability and defending meritless suits. Under the Act, suits that normally would have been brought against program participants instead were to be brought against the United States under the procedures of the Federal Tort Claims Act. Thus, the United States was substituted for the program participants as the party defendant. Because the Act's definition of program participants included the manufacturers and distributors of the vaccine as well as the agencies and personnel administering it, 42 U.S.C. § 247b(k)(2)(B) (1976), the insurers and manufacturers had the protection they felt was needed. The government, therefore, accepted liability for personal injury or death arising from the Swine Flu Program because of the act or omission of a program participant on any theory of liability. The government, however, did retain the right to indemnification from program participants for damages and costs incurred in defending a claim based on the program participants' negligence or breach of contract with the government. Under this unique statutory remedial scheme, therefore, the government took upon itself the job of weeding out meritless claims filed against the program participants. Further, because the government's right of indemnification was limited to claims based on negligence, the manufacturers did not bear the risk of having to pay claims brought on a strict products liability theory.

Congress also recognized that a person injured from a swine flu vaccination might have other remedies against the government. When such remedy is available, the Act precludes a civil action under the Swine Flu Act:

> Where an action or proceeding under [the Swine Flu Act] is precluded because of the availability of a remedy through proceedings for compensation or other benefits from the United States as provided

---

**1.** President Ford reported to Congress that the strain of flu had been discovered among some Army recruits at Fort Dix, New Jersey, and that it was similar to the strain that caused 548,000 deaths in the United States in 1918 and 1919. 1122 Cong.Rec. 8049 (1976).

**2.** The bill, introduced by Senator Kennedy, was passed the same day by both houses without meaningful consideration by any committee in either house. At the time the bill passed the House, most congressmen did not even have a copy of it. *See* 122 Cong.Rec. 26,625–40, 26,-793–817 (1976). The President and Congress believed that the legislation had to be passed quickly so that the Swine Flu Program could be implemented in time to protect the population during the winter of 1976–77.

by any other law, the action or proceeding shall be dismissed, but in that event the running of any limitation of time for commencing, or filing an application or claim in, such proceedings for compensation or other benefits shall be deemed to have been suspended during the pendency of the civil action or proceeding under [the Swine Flu Act].

42 U.S.C. § 247b(k)(5)(C) (1976).

Whether an action may proceed under the Swine Flu Act depends on whether another compensation scheme provides a remedy. Specifically, in this case, at least one of the Wallaces' claims under the Swine Flu Act would be precluded if Harry Wallace's injuries are compensable under FECA.

 The basic statutory requirements for eligibility for FECA compensation are as follows:

(a) The United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury *sustained while in the performance of his duty*, unless the injury or death is—

(1) caused by willful misconduct of the employee;

(2) caused by the employee's intention to bring about the injury or death of himself or of another; or

(3) caused by intoxication of the injured employee.

5 U.S.C. § 8102(2) (1976) (emphasis supplied).[3] FECA itself is the exclusive remedy for federal employees within its coverage, 5 U.S.C. § 8116(c) (1976). Federal employees' injuries that are compensable under FECA cannot be compensated under other federal remedial statutes, including the Federal Tort Claims Act. *United States v. Demko*, 358 U.S. 149, 151 n.1, 87 S.Ct. 382, 383 n.1, 17 L.Ed.2d 258 (1966).

The Act vests with the Secretary of Labor exclusive authority to administer FECA and to decide all questions arising under FECA, including eligibility for benefits. To insure uniformity, the Secretary of Labor's decisions on questions under FECA are not subject to judicial review by mandamus or otherwise:

The Secretary of Labor shall administer, and decide all questions arising under, this subchapter. He may—

(1) appoint employees to administer this subchapter; and

(2) delegate to any employee of the Department of Labor any of the powers conferred on him by this subchapter.

5 U.S.C. § 8145 (1976).

The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and

(2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b) (1976). *See Gill v. United States*, 641 F.2d 195 (5th Cir. 1981); *Concordia v. United States [Postal Service]*, 581 F.2d 439 (5th Cir. 1978).

In light of the authority Congress has given to the Secretary of Labor, most federal circuit courts have followed the rule that a federal employee cannot file an action under the Federal Tort Claims Act if there is a "substantial question" whether FECA applies, *Somma v. United States*, 283 F.2d 149, 151 (3d Cir. 1960), or unless his injuries are "clearly not compensable" under FECA. *Daniels-Lumley v. United States*, 306 F.2d 769, 771 (D.C.Cir.1962). For all practical purposes, these formulations express the same standard. *Joyce v. United States*, 474 F.2d 215 (3d Cir. 1973). We hold this to be the appropriate standard to apply to the question raised in this case—

---

**3.** The underlying rationale for FECA is to give injured workers a quicker and more certain recovery than would be available to them under a civil action by providing certain recoverable amounts for employment-related injuries without proof of fault and regardless of an employee's contributory negligence. *See United States v. Demko*, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966); *Bradford Electric Co. v. Clapper*, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026 (1932).

whether the Wallaces' action filed under the Swine Flu Act is precluded totally by coverage under FECA. The first issue we address, therefore, is whether there is a substantial question that Wallace's injuries were sustained while in the performance of his duty as a federal employee.

### B.

To determine whether Wallace was injured while in the performance of his duty, our initial inquiry is whether the obligations or conditions of Wallace's employment created a "special zone of danger" that resulted in his injury. *O'Leary v. Brown Pacific-Maxon, Inc.,* 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951).[4] The mere fact that the injury occurred while the employee was on the premises of his federal employer is not controlling. *United States v. Browning,* 359 F.2d 937 (10th Cir. 1966). Instead, all the relevant circumstances should be considered to determine whether the risks of federal employment gave rise to Wallace's contraction of Guillian-Barre Syndrome. *Bailey v. United States,* 451 F.2d 963 (5th Cir. 1971).

In *Bailey v. United States,* a federal employee was on the way home from work, and was struck by a military pickup truck while still on federal premises. When she filed suit against the government under the Federal Tort Claims Act the government raised the same defense being raised in this case—that the employee's exclusive remedy was under FECA. The court rejected the government's argument by looking at all the circumstances of the injury to determine if the plaintiff's federal employment created a "special zone of danger" that resulted in the injury. The facts the court found convincing were that the plaintiff had completed her work day, had left her job site in her own car, was not under the

supervision of her employer, was travelling home on a street used by anyone authorized to be on the Army base, and was not engaged in any activity connected with her duties as a laundry worker. The court, therefore, held that no substantial question of FECA coverage was raised and that her suit under the Federal Tort Claims Act could proceed. 451 F.2d at 967.

Applying *Bailey* to the facts of this case, the Wallaces argue that Harry Wallace had voluntarily left the building where he worked and had gone to another building where federal and non-federal workers were free to receive the swine flu inoculation. The program was administered on a national basis and his participation in the program was not part of the responsibilities of his job. Since the inoculation program did not create a "zone of special danger" for Wallace as a federal employee, the Wallaces argue, no substantial question of FECA coverage arises.

The government, on the other hand, points to *Gill v. United States,* 641 F.2d 195 (5th Cir. 1981) to support its position. In *Gill v. United States,* the plaintiff, a federal employee, participated in a voluntary inoculation program administered by the Federal Aviation Administration's (FAA) regional flight surgeon. Gill wanted shots for diphtheria and tetanus, but received by mistake a flu shot from which he suffered a severe reaction. Gill applied for FECA benefits twice. The parties disputed whether his first application was rejected because his injuries were not employment-related, but on the second application Gill was awarded disability for a work-related injury. Subsequently, Gill returned the awarded payments and pursued a claim under the Federal Tort Claims Act. The district court held that under the circumstances no sub-

---

**4.** In *O'Leary,* the court was faced with the question whether an employee who was covered by the Longshoreman's and Harbor Worker's Compensation Act and who drowned while attempting a rescue in a swimming area maintained by his employer was to be compensated. The court held that because the obligations and conditions of the employee's employment did not create a zone of danger out of which the injury arose, the Longshoreman's and Harbor Worker's Compensation Act did not apply. As held by the Fifth Circuit in *Bailey v. United States,* 451 F.2d 963 (5th Cir. 1971), we understand the analysis to be the same whether we are dealing with FECA coverage or coverage under the Longshoreman's and Harbor Worker's Compensation Act. *See Bailey v. United States,* 451 F.2d 963, 967 (5th Cir. 1971).

stantial question of FECA coverage was raised and awarded Gill a $700,000 judgment. That court considered the FECA's award of payments on Gill's second application a "cynical sham" to avoid greater liability under the Federal Tort Claims Act. The Fifth Circuit, however, reversed. It pointed to the Secretary of Labor's power to decide FECA coverage without judicial review and regarded the district court's judgment as a backhanded attempt to subject the Secretary of Labor's decision in that case to judicial review.

*Gill*, however, is distinguishable from *Bailey* and this case. In *Gill*, the plaintiff was inoculated under a program administered by the FAA, his employer. Presumably, only FAA employees could receive the shots he requested. He was not inoculated as part of a national program for all citizens at a place where federal and nonfederal employees could receive their shots. Most importantly, the Secretary of Labor had already ruled on Gill's case and awarded him benefits.[5] In that situation, once the Secretary of Labor has ruled, his decision is not reviewable by a federal court. *See Waters v. United States*, 458 F.2d 20 (8th Cir. 1972).

The government also argues that on October 27, 1976, the Secretary of Labor announced a policy of awarding FECA benefits to federal employees who have adverse reactions to swine flu inoculations given on federal facilities. FECA Program Memorandum No. 26–76.[6] It cites several Employees Compensation Appeals Board (ECAB)[7] cases for the proposition that the Secretary of Labor has followed a policy of compensating under FECA federal employees who are injured by agency sponsored inoculation programs administered on federal facilities.[8] The government concedes, however, that none of these cases raised the issue whether the injury was work-related. The sole issue addressed was whether the drugs or inoculations administered by the federal agency caused the plaintiff's injury.

On the other hand, the ECAB has consistently held that "while in the performance of duty" means "arising out of and in the course of employment." *In re Estelle M. Krasprzak*, 27 ECAB 339 (1979). In applying this standard, the ECAB recently used the same inquiry as that employed by the Fifth Circuit in *Bailey v. United States, supra*: "whether under all the circumstances, a causal relationship exists between the employment itself, or the conditions under which it is to be performed, and the resultant injury." *In re Estelle M. Krasprzak, supra*, at 342. Yet, FECA Memorandum 26–76 and the district court below appear to focus exclusively on whether the inoculation was given on federal premises. This "premises" approach is inconsistent with the ECAB's own formulation of the proper test to be applied as stated in *In re Estelle M. Krasprzak, supra*, and was expressly re-

---

5. The facts in *Gill* are similar to the facts in *Reep v. United States*, 557 F.2d 204 (9th Cir. 1977), which was relied on by the district court in this case. In *Reep*, a policeman at the Pearl Harbor Naval Base was struck by a truck while he was walking across the street in front of the police department before he was to go on duty. He filed a claim under the Federal Tort Claims Act and the government asserted the FECA defense. On appeal, the parties stipulated that if the claim had been presented to the Secretary of Labor, it would be compensated under FECA. The Ninth Circuit held that *based on that stipulation* there was a substantial question of FECA coverage.

6. Apparently, it has been the Secretary of Labor's policy to compensate under FECA injuries to federal employees resulting from reactions to all federal agency sponsored inocula-

tion programs given at federal facilities. *See* FECA Program Memorandum No. 42.

7. The Employees Compensation Appeals Board is the only body which may hear appeals from adverse final decisions by the Director of the Office of Workers' Compensation Programs of the Department of Labor, which considers applications for FECA benefits. 5 U.S.C. §§ 8128(b), 8145 (1976); 20 C.F.R. § 501.3 (1981). It consists of three members appointed by the Secretary of Labor. 20 C.F.R. § 501.-2(b) (1981).

8. The cases cited by the government are *In re Robert H. Ash*, 15 ECAB 95 (1963); *In re Alma G. Brannan, et al.*, 16 ECAB 859 (1964); *In re William Clark*, 17 ECAB 294 (1966); *In re Mayme V. S. Price*, 29 ECAB 615 (1978); *In re Hudie B. Seaman*, 16 ECAB 271 (1964).

jected by the Fifth Circuit in *Bailey.* Further, this court cannot see how a causal relationship between one's employment can be established based solely on the fact that the inoculation took place on federal premises. While agency interpretations of a statute the agency is charged with executing are entitled to considerable weight, *see New York State Department of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 2517, 37 L.Ed.2d 688 (1973), we decline to follow the statutory interpretation now offered by the government because administrative policy statements such as FECA Memorandum 26–76 and ECAB opinions such as those cited in footnote 8, *supra,* are inconsistent with other ECAB opinions and fly in the face of simple logic and relevant judicial precedent such as *Bailey.*

■ Harry Wallace took part in a national flu inoculation program by receiving a shot on the premises of his federal employer. He could just as easily have taken his shot at any number of other locations. His employment status was in no way conditioned on his participation in the inoculation program. To affirm the district court would require us to hold that, under these circumstances, Wallace was injured in "the performance of his duty," that the "injury arose out of and in the course of his employment," and that a causal relationship exists between his injuries and his employment. This we simply are unprepared to do. Wallace's voluntary decision to receive a flu shot on the premises of his employer rather than at his neighborhood school or elsewhere does not make his injury resulting from that shot employment-related and compensable under FECA. We conclude, therefore, that Wallace's injuries are clearly not compensable under FECA and that he may pursue his claim in federal court under the Swine Flu Act.

**9.** The committee report accompanying H.R. 3735 (the Swine Flu Act) stated:
> An action will be allowed against the Federal Government if it could otherwise have been brought against a private individual under the law of the place where the act or omission occurred.

## C.

■ Even if we assume that Wallace's injuries were work-related and compensable exclusively under FECA, FECA bars only the Wallaces' claim against the United States as Wallace's employer. It does not bar the Wallaces' claim against the United States as the substitute defendant for other program participants such as the manufacturers of the vaccine. FECA, by its own provisions, does not preclude rights of federal employees to sue private third parties for injuries caused by such parties when the federal employee is on the job. 5 U.S.C. § 8131 (1976); *see Weyerhauser S.S. Co. v. United States,* 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963). Had Congress not substituted the United States as party defendant under the Swine Flu Act, there would be no question that the Wallaces' cause of action against the manufacturers for their acts or omissions would not have been precluded by FECA. When Congress agreed to have the United States substituted to defend these suits against the manufacturers, it was clearly Congress' intent not to vary the substantive rights of the claimants to recover for tortious acts or omissions of the manufacturers.[9]

Since the Wallaces' underlying claim is against the manufacturers and is brought against the United States as substitute defendant, to hold that FECA precludes *any* action under the Swine Flu Act would affect adversely their substantive rights. This the Swine Flu Act was not intended to do. In essence, federal employees in Harry Wallace's position have two causes of action against the United States—one for the acts or omissions of the United States in administering the program and one for the acts or omissions of the program participants such as the manufacturers. FECA is an exclusive remedy only for potential claims

When the bill was discussed on the floor of the House, Representative Rogers announced that "no one's rights are limited by the substitution of the United States as party defendant." 122 Cong.Rec. 26,810 (1976). *See Hunt v. United States,* 636 F.2d 580 (1980).

against the United States as employer for work-related injury; it cannot preclude claims against the United States as substitute defendant for acts or omissions of private third parties.

Our holding is supported by *Hunt v. United States*, 636 F.2d 580 (1980), where the court of appeals for the District of Columbia held that the *Feres* doctrine, which makes military personnel's statutory disability remedies exclusive, did not preclude the claim of a person on active military duty against party participants under the Swine Flu Act. The district court in this case was aware of the *Hunt* case and quoted the following dictum:

> A federal civilian employee, having received a swine flu vaccination incident to his employment, could not assert a claim under the Swine Flu Act alleging that his fellow federal employee had negligently administered the inoculation; the injured employee's exclusive remedy would be his entitlement to statutory compensation.

*Id.* at 595 n.40.

The district court read this language to mean that *all* causes of action under the Swine Flu Act were excluded by FECA, not just a claim against a fellow federal employee for his negligent acts. But the *Hunt* case clearly concluded that while a claim by a military member against fellow members of the service was precluded by the *Feres* doctrine, "the *Feres* doctrine and its rationale have no application to claims under the Swine Flu Act based on acts or omissions of private program participants." *Id.* at 599. For the same reasons, we hold that a federal employee's claim against a private program participant under the Swine Flu Act is not precluded by FECA.

### III.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded to that court for an adjudication of the Wallaces' claims on the merits.

REVERSED AND REMANDED.