Jacqueline and Salvadore A.
DiPIPPA, Appellants,

v.

UNITED STATES of America, Appellee.

No. 82–3000.

United States Court of Appeals,
Third Circuit.

Argued July 8, 1982.
Decided Aug. 24, 1982.

Anthony J. Ciotola, Hazleton, Pa., Clifford J. Shoemaker, (argued), Washington, D. C., for appellants.

David C. Shipman, Asst. U. S. Atty., Harrisburg, Pa., Leonard Schaitman, John F. Cordes (argued), U. S. Dept. of Justice, Civ. Div., Washington, D. C., for appellee.

Before SEITZ, Chief Judge, SLOVITER, Circuit Judge, and McCUNE, District Judge.*

## OPINION OF THE COURT

SEITZ, Chief Judge.

The DiPippas appeal from the district court's order dismissing their action against the United States for injuries Jacqueline DiPippa sustained from a swine flu vaccination. This court has jurisdiction under 28 U.S.C. § 1291 (1976).

### I.

In November 1976, a federal employee, Jacqueline DiPippa voluntarily received a swine flu vaccination. The shot was given on federal premises during normal working hours. A month later, Jacqueline DiPippa developed symptoms diagnosed as Guillain-Barre Syndrome. In 1978, she and her husband filed a notice of administrative claim under the Swine Flu Act for injuries sustained from the vaccination. The Government denied the claim on the ground that the DiPippas' exclusive remedy was one for compensation pursuant to the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8101 *et seq.* This action followed.

The DiPippas filed their complaint in the United States District Court for the District of Columbia under the Swine Flu Act of 1976, 42 U.S.C. § 247b(j)–(*l*) (amended 1978). The case was consolidated with other swine flu cases for pretrial proceedings in *In re Swine Flu Immunization Products Liability Litigation*, 446 F.Supp. 244 (J.P.M. D.L.1978), and then was transferred to the United States District Court for the Middle District of Pennsylvania. Because the district court found there was a substantial question that FECA might be the DiPippas' exclusive remedy,[1] it dismissed the action for want of jurisdiction.

---

* Honorable Barron P. McCune, United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. Mr. DiPippa seeks damages for loss of consortium arising from his wife's injuries. Be-

## II.

DiPippa argues that she may pursue her swine flu claim against the Government for two reasons: (1) there is no substantial question of FECA coverage and therefore she need not pursue a FECA remedy; and (2) even if there were FECA coverage, it would not bar her claim against the Government for the acts and omissions of the program participants.[2] DiPippa further argues that the district court's interpretation of the Swine Flu Act denies her equal protection under the law and, in light of our doctrine that statutes should be interpreted in a constitutionally valid manner, should be rejected.

## A.

■ The Swine Flu Act provides that a claim for any injury sustained from the swine flu program shall be brought directly against the United States under the procedures established by the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* The Swine Flu Act makes this remedy exclusive, 42 U.S.C. § 247b(k)(3), except where a remedy under any other law provides claimant's exclusive remedy, 42 U.S.C. § 247b(k)(5)(C). Where FECA applies, its remedy is exclusive and bars all other claims for compensation against the Government. Thus, we must first determine whether FECA is DiPippa's exclusive remedy.

Only the Secretary of Labor or his designee may determine the scope of FECA coverage. 5 U.S.C. § 8128(b). In deference to such authority, this court has held that where a "substantial question" of FECA coverage exists, federal district courts will not entertain claims under the FTCA.

*Joyce v. United States,* 474 F.2d 215, 219 (3rd Cir. 1973); *Somma v. United States,* 283 F.2d 149, 151 (3rd Cir. 1960).

A substantial question of FECA coverage exists unless it is "certain that [the Secretary of Labor] would find no coverage." *Concordia v. United States Postal Service,* 581 F.2d 439, 442–43 (5th Cir. 1978). Thus, we first consider whether DiPippa's claim presents a substantial question of FECA coverage under that standard.

■ DiPippa voluntarily received the swine flu inoculation while she was a federal employee, on federal premises, during normal working hours. Three FECA Program Memoranda indicate the Labor Department's intent to provide FECA coverage for adverse reactions to inoculations administered by federal employers on federal premises. FECA Program Memorandum No. 42 (March 3, 1966) states that "[d]eleterious effects such as . . . reaction to agency-sponsored innoculation [sic] . . . will be compensable" under FECA. FECA Program Memorandum No. 186 (December 23, 1974) supplements the 1966 memorandum and states that FECA covers "any deleterious result of medical services furnished by the employing agency for non-work related illnesses or injuries." In 1976, the Labor Department published a third memorandum stating that adverse reactions to swine flu inoculations "given to Federal employees by Federal facilities are compensable under [FECA]." FECA Bulletin No. 26–76 (October 27, 1976). We believe that these bulletins raise a substantial question of FECA coverage.

■ DiPippa correctly points out that the first two memoranda indicate only that agency-sponsored medical services provided

---

cause it found there was a substantial likelihood that Mrs. DiPippa's injuries are compensable under FECA, and because FECA coverage bars a spouse's suit for loss of consortium, *Underwood v. United States,* 207 F.2d 862 (10th Cir. 1953); *Levine v. United States,* 478 F.Supp. 1389 (D.Mass.1979), the district court also dismissed Mr. DiPippa's claim against the Government. Mr. DiPippa's claim to relief is dependent on his wife's. Thus we need conduct no independent analysis of his claim.

**2.** The Swine Flu Act defines program participants in § 247b(k)(2)(B): "the term 'program participants' . . . means the manufacturer or distributor of the swine flu vaccine . . ., the public or private agency or organization that provided an inoculation under the swine flu program . . ., and the medical and other health personnel who provided or assisted in providing an inoculation under the swine flu program . . . ."

under 5 U.S.C. § 7901 (1976) qualify for FECA coverage, and that she received her swine flu shot under a nationally sponsored program pursuant to 42 U.S.C. § 247b(j)–(*l*). She argues that the third memorandum conflicts with recent federal court decisions and prior policies of the Secretary. *See Wallace v. United States*, 669 F.2d 947, 954 (4th Cir. 1982). While this may be true, it does not mean that there is not a substantial question of FECA coverage. The Secretary of Labor's decisions regarding coverage are absolutely immune from judicial review, 5 U.S.C. § 8128(b), whether or not a particular determination is grounded in logic or precedent. *Cf. Gill v. United States*, 641 F.2d 195 (5th Cir. 1981) (employee may not seek review of Secretary's determination of coverage on the ground of bad motive). Should the Secretary rule that FECA covers DiPippa's injury, his determination would be conclusive. We think the presence of FECA Bulletin 26–76 raises a substantial possibility that he would so rule.

We agree with the district court that DiPippa's claim presents a substantial question of FECA coverage. We are not persuaded to the contrary by the analysis in *Wallace.*

### B.

The second issue we address is whether FECA coverage would bar DiPippa's swine flu claim against the United States for the acts and omissions of the program participants. To resolve this issue, we must look to the language of both statutes.

In the Swine Flu Act, Congress sought to implement a national vaccination program in response to the perceived threat of a national flu epidemic. In doing so, it strove both to immunize manufacturers from any liability for injuries allegedly sustained from the vaccination program and to provide just compensation for any such injury. 122 Cong.Rec. 26,813 (remarks of Cong. Rogers). To achieve these two goals, the United States substituted itself as defendant in all potential swine flu claims, § 247b(k)(1)(B), made itself amenable to

suit under the FTCA, *id.*, and made this the exclusive remedy for all swine flu claims, § 247b(k)(3), except where an alternate and exclusive method of compensating the injury existed under prior law, § 247b(k)(5)(C). Thus, we must look to FECA to determine whether or not DiPippa can maintain an action against the Government for the acts and omissions of the program participants.

Where FECA applies, it unambiguously precludes "all other liability of the United States" either "under a workmen's compensation statute or under a Federal tort liability statute." 5 U.S.C. § 8116(c). On the other hand, FECA allows claims for compensable injuries only against "a person other than the United States." 5 U.S.C. § 8131(a). DiPippa's suit is not against a third party, but directly against the United States, as the plain language of the Swine Flu Act expressly requires. *See* 42 U.S.C. § 247b(k)(1)(B). FECA coverage therefore seems to bar DiPippa's swine flu claim against the Government.

DiPippa argues, however, that because section 8131 allows suits against third parties, section 8116(c) does not bar her claim against the Government for the acts and omissions of the program participants. Her theory is that section 8116(c) does not apply, because, although the Government is the named defendant, the action is against third parties. DiPippa's argument not only ignores the plain language of the statute, but it misinterprets the purpose behind section 8131. Sections 8131 and 8132 make it clear that the claimant should not be compensated twice for the same injury at the Government's expense. Congress intended those sections to provide a means of reimbursement to the Government where the claimant recovers twice for the same injury. The sections allow the claimant to pursue a third party, at the claimant's expense, so long as the successful claimant reimburses the Government for any FECA benefits the claimant receives. Congress designed these sections to limit the Government's costs under FECA, not to subject it to multiple claims for the same injury, as DiPippa's statutory interpretation would do.

Plainly, by these two sections [8131 and 8132] Congress deals with the liability of persons *"other than the United States"* to employees entitled to compensation under the act, not for the purpose of increasing that compensation, but for the purpose of reimbursing the Government for payments made and of indemnifying it against other amounts payable in the future. The sections emphasize the disposition to treat the compensation provided for as adequate for the injuries received, and they negative any intention on the part of the Government to make further payments.

*Dahn v. Davis,* 258 U.S. 421, 430, 42 S.Ct. 320, 321, 66 L.Ed. 696 (1922) (emphasis in original).

Despite the clear statutory language, DiPippa argues that Congress did not intend for FECA to bar a tort claim based on the acts and omissions of the program participants. She relies on both *Hunt v. United States,* 636 F.2d 580 (D.C.Cir.1980), and *Wallace v. United States,* 669 F.2d 947 (4th Cir. 1982), to support her statutory interpretation. *Hunt* is distinguishable, and we find ourselves in disagreement with the statutory interpretation in *Wallace.*

In *Hunt,* plaintiffs received a swine flu vaccination while on active military duty and filed suit under the FTCA against the United States. The court held that the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which holds that remedies granted under the veterans' laws often bar relief under the FTCA, did not bar plaintiffs' swine flu claims. The fact that compensation under the relevant veterans' laws was not expressly exclusive was the determinative factor in *Hunt.* The court reasoned that the Swine Flu Act's subordination clause, section 247b(k)(5)(C), "does not itself bar an action under the Swine Flu Act; another remedy must preclude it." 636 F.2d at 595. In *Hunt,* the veterans' laws provided the other remedy, and, " '[u]nlike the usual workman's compensation statute, . . . there is nothing in . . . the veterans' laws which provides for exclusiveness of remedy.' " *Id.*

at 585 (quoting *Brooks v. United States,* 337 U.S. 49, 53, 69 S.Ct. 918, 920, 93 L.Ed. 1200 (1949)). In this case, FECA provides the other remedy, and it is expressly exclusive.

In *Wallace,* the Fourth Circuit held that FECA "does not bar [plaintiff's] claim against the United States as the substitute defendant for other program participants." 669 F.2d at 954. The court reasoned that "FECA is an exclusive remedy only for potential claims against the United States as employer for work-related injury," and that the Act "cannot preclude claims against the United States as substitute defendant for acts or omissions of private third parties." *Id.* at 945–55. We disagree.

We find strong support for our analysis in cases holding that FECA bars claims based on the negligence of federal drivers under the Federal Drivers Act, 28 U.S.C. § 2679 (1976). The Federal Drivers Act provided the "pattern" after which Congress fashioned the "unusual, though not unique manner" by which the Government assumed liability for the acts of program participants in the swine flu program. *See* 122 Cong.Rec. 26,816 (remarks of Cong. Rogers). Application of that Act therefore provides a useful analogy. Congress intended the Federal Drivers Act to relieve federal drivers of the burden of expensive personal liability insurance. *See* S.Rep.No. 736, 87th Cong., 1st Sess. 1961, *reprinted in* 1961 U.S.Code Cong. & Ad.News 2784, 2785. To achieve that purpose, Congress, in language remarkably similar to that of the Swine Flu Act, substituted the United States as the exclusive defendant in all claims against federal employees operating motor vehicles in the performance of duty.

The compensation system set up under FECA bars an action under the Federal Drivers Act, even though federal employees would have had a common law action against the negligent driver prior to the Act. *See, e.g., Van Houten v. Ralls,* 411 F.2d 940, 943 (9th Cir.), *cert. denied,* 396 U.S. 962, 90 S.Ct. 436, 24 L.Ed.2d 426 (1969); *Noga v. United States,* 411 F.2d 943, 944 (9th Cir.), *cert. denied,* 396 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92 (1969). In

*Noga,* plaintiff sought to avoid this result by "characteriz[ing] the United States as a technical defendant substituted in place of the negligent federal driver," and arguing that FECA's exclusivity clause therefore did not apply. 411 F.2d at 945. This is precisely DiPippa's argument. The United States Court of Appeals for the Ninth Circuit rejected Noga's argument.

> We do not believe plaintiff's proposed solution is permissible under the exclusivity provision of the FECA. The statutory language [of section 8116(c)] is not ambiguous. It states that the United States is not liable under the FECA and the Federal Tort Claims Act, but only under the FECA. This provision was not tampered with in the Federal Drivers Act.

*Id.* We find DiPippa's argument similarly unacceptable. The statutory language is clear: the Swine Flu Act did not negate the exclusivity language of FECA. On the contrary, it provided for it in section 247b(k)(5)(C). The legislative history explaining that clause makes this eminently clear.

> This provision gives priority to the handling of claims for which a remedy from the United States (as compared to some other source) is already available, using that remedy rather than the remedy provided by [this] legislation.

122 Cong.Rec. 26,815 (remarks of Cong. Rogers).

We agree with the district court that if there is FECA coverage, it would bar any swine flu claim DiPippa might assert against the Government.

### C.

DiPippa argues that the district court's construction of the Swine Flu Act violates her right to equal protection. She argues that the district court's interpretation establishes two classes of swine flu plaintiffs: 1) injured persons eligible for compensation from the United States under another statute; and 2) those not so eligible. Only the latter group is permitted to pursue remedies based upon acts of both the Government and the program participants.

Although the equal protection clause of the Fourteenth Amendment has no application against the United States, the Supreme Court has held that "if a classification would be invalid under the Equal Protection clause of the Fourteenth Amendment, it is also inconsistent with the due process requirement of the Fifth Amendment." *Johnson v. Robison,* 415 U.S. 361, 364–65 n.4, 94 S.Ct. 1160, 1164 n.4, 39 L.Ed.2d 389 (1974). A statutory classification in the area of social and economic welfare will not violate due process if it is reasonable and bears some rational relationship to a legitimate congressional goal. *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971).

DiPippa argues that "[s]ingling out those who happen to receive federal workers' compensation benefits and denying them the right they would otherwise be entitled to ... is clearly an irrational classification." We disagree. We are unable to find that the disparity in treatment between persons compensated under FECA and those who are not is so unrelated to the objects of both FECA and the Swine Flu Act as to be arbitrary and irrational.

One congressional purpose behind the Swine Flu Act is to "assure an orderly procedure for the prompt and equitable handling of any claim for personal injury or death arising out of the administration of [the swine flu] vaccine." § 247b(k)(1)(B)(i). Courts have uniformly recognized that Congress intended FECA to guarantee federal employees "surer and more immediate relief in return for foregoing more expensive awards outside the system." *Gill v. United States,* 641 F.2d 195, 197 (5th Cir. 1981). In light of this guarantee, Congress could have reasonably concluded that federal employees asserting a swine flu claim already had a sufficient remedy under FECA that needed no supplement.

We hold that the procedure that Congress adopted under the Swine Flu Act is rationally related to achieving the legitimate goal of assuring "an orderly procedure for the prompt and equitable handling" of claims.

## III.

The district court dismissed DiPippa's claim for want of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). While recognizing the general rule that "district courts ordinarily must withhold further action pending the outcome of proceedings under the FECA," the district court reasoned that the language of the Swine Flu Act required dismissal of DiPippa's claim.

> Where an action or proceeding under this subsection is precluded because of the availability of a remedy through proceedings for compensation or other benefits from the United States as provided by any other law, the action or proceeding shall be dismissed. . . .

42 U.S.C. § 247b(k)(5)(C).

■ We do not interpret the language of that section so harshly where, as here, there is a substantial question of FECA coverage. The district court would require dismissal where there is a mere possibility of an exclusive remedy under some other law. The language of the Act requires dismissal only where' the "availability" of an exclusive remedy precludes a claim under the FTCA. If the Secretary of Labor should determine that no FECA remedy is available, DiPippa may pursue her claim under the FTCA. To avoid statute of limitations problems, the district court should stay proceedings in the action until the Secretary resolves the question of FECA coverage. *Joyce v. United States*, 474 F.2d 215 (3rd Cir. 1973); *Somma v. United States*, 283 F.2d 149 (3rd Cir. 1960). Indeed, the Government specifically stated that it would not object if this court remanded the case to the district court with instructions to reinstate the complaint and stay proceedings.

## IV.

We will vacate the order of the district court and remand the case with directions to reinstate the complaint and to stay further action pending the outcome of any FECA proceeding.