Ramiro VILANOVA, et al.,
Plaintiffs, Appellants,

v.

UNITED STATES of America, et al.,
Defendants, Appellees.

No. 87–1993.

United States Court of Appeals,
First Circuit.

Argued March 7, 1988.

Decided June 30, 1988.

Robert J. Walser, San Juan, P.R., for plaintiffs-appellants.

Fidel A. Sevillano Del Rio with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for defendants-appellees.

Before CAMPBELL, Chief Judge, WISDOM,* Senior Circuit Judge, and BOWNES, Circuit Judge.

WISDOM, Senior Circuit Judge:

This is a malpractice case. The plaintiff, Ramiro Vilanova, contends that doctors at the United States Naval Station Hospital in Roosevelt Roads, Puerto Rico mistreated his minor injuries and caused him to be severely and permanently disabled. He brings suit for damages under the Federal Tort Claims Act ["FTCA"], 28 U.S.C. § 1346(b). The district court held that his complaint is barred by the Nonappropriated Fund Instrumentalities Act ["NFIA"], 5 U.S.C. §§ 8171–73.[1] We affirm.

## I.

In January 1982, Vilanova was treated at the United States Naval Station Hospital at Roosevelt Roads for injuries sustained when, on his way to work as a custodian, he was struck by a hit-and-run driver. The accident occurred on naval station property.

The accident produced a subdural hematoma, a blood clot in Vilanova's brain. Vilanova contends that the rapid progression of this condition would have been avoided if discovered in time, and that the Naval Station doctors negligently failed to discover the clot. The blood clot went undetected for several months and caused a severe deterioration of Vilanova's mental capacity resulting in his being completely disabled.

Vilanova was employed by the Sea Breeze Club, a non-appropriated fund facility at the naval station. The NFIA provides that he is covered by the workers' compensation scheme of the Longshoremen and Harbor Workers' Compensation Act ["LHWCA"], 33 U.S.C. § 901 et seq.[2] The NFIA also provides that LHWCA compensation is the exclusive remedy against both the United States and the nonappropriated fund employer for injuries "arising out of and in the course of" Vilanova's employment. 5 U.S.C. § 8173; 33 U.S.C. § 902(2).

Vilanova has already been paid LHWCA compensation for his injuries. Shortly after the accident, Vilanova's supervisor filed reports of Vilanova's injury with the Department of Labor and with the Employers' Self–Insurance Services ["ESIS"], the private insurance carrier for Vilanova's employer. These reports are required by the LHWCA, 33 U.S.C. §§ 929–30, and automatically trigger LHWCA compensation unless the employer controverts liability. Id. § 914(a). Vilanova's employer did not controvert liability and, in September 1982, ESIS began sending Vilanova bi-weekly compensation payments.[3]

---

* Of the Fifth Circuit, sitting by designation.

1. The NFIA is codified as subchapter II of the Federal Employee Compensation Act ["FECA"], 5 U.S.C. § 8101 et seq.

2. "Nonappropriated fund instrumentalities" include, for example, the Navy exchanges, clubs, and the Navy's "Ships Stores Ashore". 5 U.S.C. § 2105(c). Employees of nonappropriated fund instrumentalities are specifically excluded from coverage under the FECA, 5 U.S.C. § 2105(c), and certain other laws administered by the Civil Service System. See Johnson v. United States,

600 F.2d 1218, 1221 (6th Cir.1979). Instead, the NFIA provides that these employees are covered by the worker compensation scheme in the LHWCA. 5 U.S.C. § 8171. The LHWCA, unlike the FECA, provides that the employer, and not the United States, is liable for compensation of injured employees. 33 U.S.C. § 904; Johnson, 600 F.2d at 1221.

3. Vilanova's bi-weekly LHWCA benefits were calculated according to the standard scale set out in the Act. ESIS determined from Vilanova's medical records that he is permanently and totally disabled. Accordingly, he is entitled to

Vilanova accepted these payments while proceeding with this FTCA suit. In November 1986, after more than four years of LHWCA payments, Vilanova, ESIS, and the Department of the Navy negotiated a lump-sum settlement of $15,000 in lieu of continued bi-weekly payments. In January 1987, as required by the LHWCA, the Deputy Commissioner in the Department of Labor in charge of nonappropriated fund instrumentalities reviewed and approved this settlement. *Id.* § 908(i). The settlement specifically discharges the liability of Vilanova's employer (the Sea Breeze Club) and its insurance carrier (ESIS) for compensation, but preserves the claim against the carrier for future medical expenses related to the injuries.

Vilanova has urged his case once before in this court. In *Vilanova v. United States [Vilanova I],*[4] this court reversed the district court's holding that Vilanova was estopped from bringing this FTCA suit because he had accepted LHWCA compensation. In an unpublished opinion, *Vilanova I* held that acceptance of LHWCA compensation paid voluntarily by an employer or a private insurance carrier does not bar an injured employee from bringing suit under the FTCA.[5] Instead, only a finding that Vilanova's injuries arose out of and in the course of his employment governs whether the injuries are compensable under the LHWCA and thus also governs whether his FTCA suit is barred by the NFIA.[6] Accordingly, this court then remanded the case to the district court to determine whether Vilanova's injuries arose out of and in the course of his employment.

Rather than make this determination, the district court once again found that Vilanova was estopped from bringing this FTCA action. The district court gave two reasons for its decision. First, Vilanova had filed an application for LHWCA benefits in June 1984, a fact the district court discovered for the first time upon remand. Second, Vilanova had in the interim agreed to the lump-sum settlement. The district court therefore concluded that Vilanova was no longer a "passive" recipient of LHWCA benefits paid "voluntarily" by his employer's insurance carrier.

In the light of *Vilanova I,* the June 1984 application was insufficient to bar his FTCA suit. The settlement, however, is based upon an administrative finding that Vilanova's injuries are compensable under the LHWCA, a finding that those injuries arose out of and in the course of Vilanova's employment. This finding is due great deference by this court. Further, because Vilanova sought and acquiesed in this finding, he is estopped from contesting it here. Accordingly, his FTCA suit is barred.

## II.

That Vilanova might better his recovery in an FTCA suit is irrelevant to whether he may bring such a suit.[7] Like other worker compensation programs, Congress intended the NFIA to simplify and expedite the process of compensating employees for on-the-job injuries. To do so, the NFIA adopted the administrative scheme already established by the LHWCA. That scheme

---

two-thirds of his average weekly wages as LHWCA compensation. *Id.* § 908(a). At the time of the accident, Vilanova earned about $120 per week. Thus, his LHWCA compensation would be about $160 every two weeks.

**4.** 802 F.2d 440 (1st Cir.1986), *aff'g in part, vacating, and remanding,* 625 F.Supp. 651 (D.P.R. 1985).

**5.** No. 86–1148, slip op. at 3–4 (1st Cir. July 28, 1986) [802 F.2d 440 (table)]. First Circuit Rule 14 states:

Because unpublished memoranda and opinions of this and other courts usually fail to disclose fully the rationale of the court's decision, and because they are not uniformly

available to all persons, they are never to be cited in unrelated cases, unless they are in the process of being published.

U.S.Ct. of App. 1st Cir.Rule 14, 28 U.S.C.A. We cite this unpublished opinion because it is in a related case and because we reaffirm and explain its holding in this opinion.

**6.** *Vilanova I,* slip op. at 4.

**7.** Because Vilanova's compensation is based upon a finding that he is totally and permanently disabled, his LHWCA award covers both the injuries sustained in the hit-and-run accident and any complications that arose as a result of the alleged malpractice.

forces employers to compensate injured employees promptly for work-related injuries. It is a crucial part of this scheme that neither injured employees nor their employers have any choice in the matter of compensation for work-related injuries.[8]

Any "accidental injury ... arising out of and in the course of employment" is compensable under the LHWCA. 33 U.S.C. § 902(2). The employer is liable for compensation "irrespective of fault as a cause for the injury". *Id.* § 904(b). Compensation payments are determined by the degree of disability and the employee's earnings according to a standard scale. *Id.* §§ 906(b), 908, 909, 910. Employers are required to maintain sufficient security for adequate compensation payments. *Id.* § 932. The employer initiates the compensation process by filing a report with the Department of Labor whenever it knows that an employee has been injured. *Id.* §§ 914(a), 929–30. To trigger compensation, an employee needs only to ensure that his employer knows about his injury; the injured employee need not formally apply for benefits.[9]

In exchange for this system of standard and automatic compensation, injured workers are barred from pursuing any other claims against the United States or their employers for injuries compensable under the LHWCA. 5 U.S.C. § 8173.[10] Further, compensation of injured workers is limited to the amounts provided in the standard scale. This makes the cost to the employer of employee injuries more predictable. It also saves all parties the expense and delay associated with litigation over liability and damages.[11]

### A.

For an injured employee to agree to compensation while proceeding against the government under the FTCA is plainly at odds with the scheme of federal worker compensation.[12] Worker compensation acts as a substitute rather than a supplement for FTCA actions.[13] The NFIA was not intended to give injured employees a choice between LHWCA compensation and an FTCA suit. Neither was it intended to give injured workers two chances to maximize their compensation award.[14] Injured employees allowed to receive compensation while filing an FTCA suit could only gain by filing those suits, even when there was

---

8. *See* Epstein, The Historical Origins and Economic Structure of Workers' Compensation Law, 16 Ga.L.Rev. 775, 800 (1982).

9. *See Atkinson v. Gates, McDonald & Co.,* 838 F.2d 808, 810 (5th Cir.1988).

10. Injured employees retain, with certain restrictions, the right to recover damages from negligent third parties other than the United States or their employer. 33 U.S.C. § 933(a)–(b). Any such recovery, however, is subject to the subrogation right of the employer (or the employer's compensation carrier) to be reimbursed for LHWCA compensation paid the injured employee. 33 U.S.C. § 903(e). *See The Etna,* 138 F.2d 37, 41 (3d Cir.1943). *See also Peters v. North River Insurance Co. of Morristown, N.J.,* 764 F.2d 306, 312 (5th Cir.1985), *Cella v. Partenreederei MS RAVENNA,* 529 F.2d 15, 19 (1st Cir.1975), *cert. denied,* 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976); *Nacirema Operating Co. v. Oosting,* 456 F.2d 956 (4th Cir.), *cert. denied,* 409 U.S. 980, 93 S.Ct. 313, 34 L.Ed. 2d 243 (1972); *Joyner v. F & B Enterprises, Inc.,* 448 F.2d 1185 (D.C.Cir.1971); *International Terminal Operating Co. v. Waterman Steamship Co.,* 272 F.2d 15 (2d Cir.1959), *cert. denied,* 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960), all following *The Etna.*

11. For a general discussion of the workers' compensation "bargain", *see* Epstein, Workers' Compensation, 16 Ga.L.Rev. at 800–03.

12. *See Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 193–94, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983); *Reep v. United States,* 557 F.2d 204, 207 (9th Cir.1977), both construing the FECA. *See also, e.g., Johansen v. United States,* 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952); *DiPippa v. United States,* 687 F.2d 14 (3d Cir. 1982); *Cobia v. United States,* 384 F.2d 711 (10th Cir.1967), *cert. denied,* 390 U.S. 986, 88 S.Ct. 1182, 23 L.Ed.2d 1290 (1968); *Posegate v. United States,* 288 F.2d 11 (9th Cir.), *cert. denied,* 368 U.S. 832, 82 S.Ct. 55, 7 L.Ed.2d 34 (1961), all construing the FECA.

13. *See Lockheed,* 460 U.S. at 193–94, 103 S.Ct. at 1036; *United States v. Demko,* 385 U.S. 149, 151 & n. 4, 87 S.Ct. 382, 384 & n. 4, 17 L.Ed.2d 258 (1966); *Patterson v. United States,* 359 U.S. 495, 496, 79 S.Ct. 936, 937, 3 L.Ed.2d 971 (1959); *Johansen,* 343 U.S. at 441, 72 S.Ct. at 857.

14. *See Lockheed,* 460 U.S. at 194, 103 S.Ct. at 1036.

little doubt that their injuries were covered by the NFIA. Such a rule would encourage, not reduce, litigation.

Nonetheless, injured employees retain the right to contest NFIA coverage. LHWCA compensation may be paid erroneously. The NFIA was not intended to give private carriers like ESIS or nonappropriated fund employers like the Sea Breeze Club the power to bar FTCA suits by injured employees. Because the LHWCA scheme requires employers and their insurance carriers to "pay first and litigate later",[15] it follows *a fortiori* that payment of compensation should not, without more, bar suit under the FTCA.

To ensure injured employees a meaningful opportunity to contest coverage and argue that they should be allowed to sue under the FTCA, we reaffirm our holding in *Vilanova I:* until coverage has been determined by judicial or administrative decision, acceptance of LHWCA compensation paid voluntarily by the employer or the employer's insurance carrier is not a bar to suit under the FTCA.[16] Accordingly, Vilanova's June 1984 application for LHWCA benefits does not bar this FTCA suit.

### B.

▆▆▆ Vilanova's settlement, however, has a different effect from his application for benefits. As is required by the LHWCA, 33 U.S.C. § 908(i), the Deputy Commissioner of Labor for LHWCA compensation reviewed Vilanova's settlement and, finding that Vilanova's injuries were compensable under the LHWCA, approved it. Vilanova was advised by counsel during the settlement negotiations. Thus, in the settlement negotiations, Vilanova had an opportunity to contest LHWCA compensation before the Department of Labor. He chose not to do so.

Because the Department of Labor has special expertise in evaluating workplace injuries and more efficient procedures for doing so than the courts, injured employees should contest NFIA coverage first before the appropriate Deputy Commissioner in Department of Labor rather than in the courts.[17] This ensures quicker and better decisions and promotes national uniformity more than would coverage decisions made by the courts.[18]

The LHWCA provides for review of any settlement by the Deputy Commissioner of the Department of Labor. 33 U.S.C. § 908(i)(1). The LHWCA also provides for review of these and other Department of Labor compensation decisions by the Benefits Review Board ["BRB"] and, ultimately, by the federal courts. 33 U.S.C. §§ 908(i)(2), 919, 921. The NFIA specifically recognizes the BRB as the appropriate avenue of appeal for NFIA compensation. 5 U.S.C. § 8171(c). We "generally must defer to the [Benefits Review] Board both in its factfinding capacity ... and in its role as interpreter of the Act".[19]

15. *See Atkinson*, 838 F.2d at 810.

16. *Accord Martin v. United States*, 566 F.2d 895, 898–99 (4th Cir.1977).

17. *See Heilman v. United States*, 731 F.2d 1104, 1110 (3d Cir.1984); *DiPippa*, 687 F.2d at 16; *Concordia v. U.S. Postal Service*, 581 F.2d 439, 442–32 (5th Cir.1978); *Reep*, 557 F.2d at 208, all dealing with FECA compensation. *See also* Annotation, Federal Employees' Compensation Act as Affecting Recovery Under Federal Tort Claims Act, 43 ALR Fed. 424 § 4(a) (1979 & Supp.1987).

18. *See* the sources cited in note 17.

19. *National Steel & Shipbuilding Co. v. Bonner*, 600 F.2d 1288, 1292 (9th Cir.1979) (citations omitted). *See also Strand v. Hansen Seaway Service, Ltd.*, 614 F.2d 572, 574 (7th Cir.1980). Corollary to this, Department of Labor findings under the LHWCA are subject only to limited judicial review. *Gondeck v. Pan American World Airways*, 382 U.S. 25, 27, 86 S.Ct. 153, 154, 15 L.Ed.2d 21 (1965); *O'Keeffe v. Smith, Hinchman & Grylls Associates*, 380 U.S. 359, 361, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895 (1965); *General Dynamics Corp. v. Sacchetti*, 681 F.2d 37, 38–39 (1st Cir.1982); *General Dynamics Corp. v. Director, Office of Workers' Compensation Programs*, 585 F.2d 1168, 1170 (1st Cir. 1978). Those findings may be overturned only if they are "unsupported by substantial evidence", "not in accord with the law", or "irrational". *Todd Shipyards v. Director, Office of Workers' Compensation Programs*, 545 F.2d 1176, 1178–79 (9th Cir.1976). *See also Strand*, 614 F.2d at 574; *National Steel & Shipbuilding*, 600 F.2d at 1292.

Here, Vilanova did not contest LHWCA coverage before the Department of Labor when he had the opportunity to do so. Although an injured employee may collaterally attack a Department of Labor finding that his injuries are compensable under the NFIA or LHWCA,[20] we hold that he may not do so when he fails to contest coverage in a decision by the Department of Labor. Here, by seeking and then signing the settlement, Vilanova solicited and then acquiesced in the Department of Labor finding that his injuries are compensable. He is therefore collaterally estopped from contesting LHWCA coverage.[21]

## III.

Because it has been determined that Vilanova's injuries are covered by the LHWCA, LHWCA compensation is Vilanova's exclusive remedy against the United States. 5 U.S.C. § 8173. Vilanova seeks to evade the NFIA's exclusivity rule by characterizing his FTCA suit against the government as a "third party action" authorized by the LHWCA. 33 U.S.C. § 933.

Whether or not the LHWCA contemplates "third party actions" against the government,[22] the NFIA does not. The NFIA states that LHWCA compensation is

> exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the disability or death ... under a Federal tort liability statute.

5 U.S.C. § 8173. The meaning of this exclusion is clear.

We see no reason to apply this exclusion to the United States acting in some capacities but not in others. We recognize that the Sixth Circuit, in *Wright v. United States*, has adopted the so-called "dual capacity doctrine":

> "An employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely unrelated to his status as employer that by estab-

---

**20.** Under the FECA, an injured government employee may *not* collaterally attack an administrative finding that his injuries are compensable. 5 U.S.C. § 8128(b). *See Grijalva v. United States*, 781 F.2d 472, 474 (5th Cir.), *cert. denied*, 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 42 (1986). The United States contends that this provision also applies to the NFIA. Although the justifications for limited review under the LHWCA are the same as the justifications for denying review under the FECA, we decline to construe this bar to judicial review beyond its plain terms. The application of 5 U.S.C. § 8128(b) is explicitly limited to FECA compensation of government employees under subchapter I of the FECA. 5 U.S.C. § 8128(c). The NFIA appears in subchapter II of the FECA and, moreover, adopts the administrative scheme of the LHWCA which provides for judicial review. 33 U.S.C. § 919, 921.

**21.** *See generally* 4 K.C. Davis, Administrative Law Treatise § 21:4 at 56–57, § 21:7 at 70–71 (2d ed. 1983), discussing *res judicata* effects of administrative decisions. *See also United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 420–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966), discussing collateral estoppel in government contract disputes under the Wunderlich Act, 41 U.S.C. §§ 321–22. *Cf. Atlantic & Gulf Stevedores v. Director, Office of Workers' Compensation Programs*, 542 F.2d 602, 606 (3d Cir. 1976), holding that employer's failure to appeal

finding of LHWCA coverage to BRB barred review of the issue by federal court. Accordingly, it is not necessary to review the Department of Labor's finding that Vilanova's injuries arose "out of and in the course of his employment".

**22.** The LHWCA, 33 U.S.C. § 933, provides:

(a) *Election of Remedies.* If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.

(b) *Acceptance of compensation operating as an assignment.* Acceptance of compensation under an award in a compensation order filed by the deputy commissioner, an administrative law judge, or the Board shall operate as an assignment to the employer of all rights of the person entitled to compensation to recover damages against such third persons unless such person shall commence an action against such third person within six months after such acceptance. If the employer fails to commence an action against such third persons within ninety days after the cause of action is assigned under this section, the right to bring such an action shall revert to the person entitled to compensation.

lished standards the law recognizes it as a separate legal person". ... The dual capacity doctrine does not destroy the theoretical superstructure of workmen's compensation. ... The dual capacity doctrine merely allows the employee to sue his employer where the employer-employee relationship does not exist because the employer is acting in a second persona unrelated to his status as employer.[23]

But *Wright* was a FECA case. This is a NFIA case and the United States was not the employer of the injured worker. Indeed, because the NFIA covers only circumstances where the United States is *not* the employer of the injured employee, the liability of the United States foreclosed by 5 U.S.C. § 8173 must always arise in some capacity other than employer. Thus, whatever the merits of the "dual capacity doctrine" with respect to other laws,[24] it is inapplicable to the NFIA's bar on FTCA suits.

### IV.

Vilanova's settlement of LHWCA compensation estops him from contesting the Department of Labor's finding that his injuries are compensable. Because his injuries have been found compensable under the LHWCA, Vilanova's FTCA suit is barred by 5 U.S.C. § 8173. Accordingly, the judgment of the district court is AFFIRMED.

**23.** *Wright v. United States,* 717 F.2d 254, 259 (6th Cir.1983), quoting 2A Larson, Workmen's Compensation Law 14–229, Section 72.81 (1982).

**24.** *See Schmid v. United States,* 826 F.2d 227, 229–30 (3d Cir.1987), discussing the doctrine's potential destructiveness to the federal worker compensation scheme; *Balancio v. United States,* 267 F.2d 135, 137–38 (2d Cir. per Hand, J.), *cert. denied,* 361 U.S. 875, 80 S.Ct. 139, 4 L.Ed.2d 114 (1959), dismissing the doctrine because Congress explicitly rejected it in the

FECA, 5 U.S.C. § 8116(c). *See also* Epstein, 16 Ga.L.Rev. at 810–11, criticizing the doctrine; 2A A. Larsen, The Law of Workmen's Compensation § 72.81 (1987), criticizing the doctrine; *id.* §§ 72.84, 72.85(d), discussing rejection of doctrine in cases under the LHWCA and the FECA. *But see id.* § 72.61, noting that "every jurisdiction dealing with the question has recognized in some form that a suit will lie against a physician who has aggravated a compensable injury by malpractice".