**Jean MARTIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 76–2289.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1977.
Decided Dec. 22, 1977.

William W. Hodges, Columbia, S. C. (Richard C. Beerman, Columbia, S. C., on brief), for appellant.

Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C. (Thomas P. Simpson, U. S. Atty., Columbia, S. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, WINTER, Circuit Judge, and THOMSEN,* Senior District Judge.

WINTER, Circuit Judge:

Injured when the automobile in which she was returning from lunch collided with an army truck, Jean Martin, an employee of the Fort Jackson PX, brought this damage action under the Federal Tort Claims Act, 28 U.S.C. § 2674. If her injuries arose out of and in the course of her employment, plaintiff's exclusive remedy would be compensation under 5 U.S.C. § 8171, since her salary was paid from nonappropriated funds of the Army and Air Force Exchange Service. *See* 5 U.S.C. § 2105(c). Indeed, plaintiff accepted statutory compensation payments, which had been paid voluntarily, even after she retained counsel and filed suit. She claimed, however, that these payments were made erroneously, and thus did not affect her right to bring a tort action, because she was not injured within the scope of her employment.

The district court dismissed the action for failure to state a claim upon which relief

* Senior United States District Judge, District of Maryland, sitting by designation.

could be granted.[1] It concluded that plaintiff had been injured in the course of her employment, and therefore it ruled that § 8171 provided her exclusive remedy.

Plaintiff appeals from this dismissal, and we reverse. We disagree with the district court's conclusion that, as a matter of law, the lunchbreak accident occurred within the scope of plaintiff's employment. Furthermore we hold that plaintiff's acceptance of compensation payments did not, as a matter of law, preclude her from pursuing tort remedies. We remand the case for a trial on the merits.

### I.

The accident from which this action arose occurred at Fort Jackson, South Carolina, on August 22, 1974. Plaintiff was apparently returning to work at the time of the accident, for the collision took place approximately 300 feet from her place of work and the hour allotted for her lunchbreak had nearly elapsed.[2]

Under the terms of 5 U.S.C. § 8171, employees of nonappropriated fund instrumentalities, including employees paid from nonappropriated funds of the Army and Air Force Exchange Service (5 U.S.C. § 2105(c)), qualify for compensation provided by the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, when their injuries arise out of the course of their employment. In addition, 5 U.S.C. § 8173 states that the liability of the United States under this scheme of compensation is exclusive; nonappropriated fund employees whose injuries are covered have no other remedies against the government. Since plaintiff is an employee of the Fort Jackson PX, she cannot maintain this federal tort action unless it be determined that the accident occurred outside the scope of her employment.

Whether a particular injury arises within the scope of employment is a question that defies uniform solutions. Rather, each case turns on a close analysis of its facts. Naturally, the focus is on those facts that bear on the relationship of the injury to the victim's job; for the purpose of compensation statutes is to provide quick, certain relief for work-related injuries. Furthermore, because compensation statutes are given a liberal construction, uncertainties generally are resolved in favor of coverage. Of course, this case presents the converse of the typical situation in which scope of employment is an issue; here, plaintiff is not arguing that her injury comes within the compensation statute, but, instead, that her injury is not covered.

The district court ruled that "[i]njuries sustained while an employee is going to or from lunch arise out of and in the course of employment." This unqualified statement cannot withstand scrutiny. True, there are cases holding that an injury sustained while at lunch occurred within the scope of the injured person's employment. But in each instance there were significant facts that linked the employee's lunchtime injury to the performance of his job. For example, in *London Guarantee & Accident Co. v. Britton*, 78 U.S.App.D.C. 195, 138 F.2d 932 (1943), relied upon by both the defendant and the district court, the employee, who was struck by a car while crossing a street, had been instructed by his supervisor to obtain lunch for his fellow employees. And in *Cardillo v. Hartford Accident & Indemnity Co.*, 71 App.D.C. 330, 109 F.2d 674 (1940), the employee was driving a company car when he was injured. By contrast, the court, in *Wetzel v. Britton*, 83 U.S.App.D.C. 327, 170 F.2d 285 (1948), upheld a finding that an employee who was struck by a bus on her way to lunch was not injured within

---

1. The dismissal was actually entry of summary judgment for defendant. Defendant moved for dismissal under Rule 12(b)(6), F.R.Civ.P., or in the alternative for summary judgment, supported by an affidavit of plaintiff's supervisor. Plaintiff filed two counteraffidavits. The memorandum opinion of the district court makes it clear that the district court considered the facts set forth in the affidavits in formulating its ruling. See Rule 12(b).

2. Plaintiff suffered amnesia as a result of the accident and she cannot describe her destination or the purpose of her travel at the time when the collision occurred.

the scope of her employment where the facts showed that the employer exercised no control over her activities during the lunchbreak. To the same effect are *Walker v. United States*, 322 F.Supp. 769 (D.Alas. 1971); and *Troutman v. Williams Furniture Corp.*, 224 S.C. 353, 79 S.E.2d 374, 376 (1953). Viewed together, these cases refute any suggestion that lunchtime injuries receive uniform dispositions; the outcome in each case depends on its facts.[3]

■ Turning to the instant case, we think that the facts fail to establish a sufficient connection between plaintiff's injury and her job. Plaintiff's lunch hour was her own time. She was unpaid, and there were apparently no restrictions on where she went or what she did so long as she returned on time. She was not performing any errands for her employer on the day of the accident, and she was riding in a privately-owned automobile. Although the accident occurred close to her place of employment and while she was apparently returning to work, those facts are entitled to little weight in determining whether she was injured within the scope of her employment. After all, commuters injured in traveling to or from work are not considered to have been injured within the scope of their employment unless there are special circumstances; that they must travel to their job in order to perform it is not enough. *See Bailey v. United States*, 451 F.2d 963, 967 (5 Cir. 1971).

## II.

Because the district court determined that compensation under 5 U.S.C. § 8171 was plaintiff's exclusive remedy, it did not consider the effect of her acceptance of compensation payments on her right to proceed in tort. Defendant now contends that receipt of these payments bars any tort recovery. Plaintiff disagrees, arguing that there should be no estoppel because the defendant voluntarily commenced the compensation payments. Principles of estoppel are implicated by the apparent duplicity in plaintiff's claiming that compensation payments have been made erroneously while at the same time accepting the payments. In essence, the issue is whether plaintiff's action constituted a binding election of remedies.

We have found no cases that discuss the question of estoppel where, as here, a plaintiff repudiates compensation payments that were made voluntarily and seeks instead to recover in tort. One commentator has stated, however, that "[m]ere acceptance of some compensation benefits, then, is not enough to constitute an election. There must also be evidence of conscious intent to elect the compensation remedy and to waive his other rights." 2A Larson, Workmen's Compensation, § 67.22, at 12–52 to 12–53. *See Gahagan Construction Corp. v. Armao*, 165 F.2d 301, 307 (1 Cir. 1948); *Smith v. Service Contracting, Inc.*, 236 F.Supp. 492 (E.D.Va.1964).

The affidavit of Donald Link, the personnel manager for the PX where plaintiff worked, discloses that compensation payments began after he filed the necessary accident report. Plaintiff apparently has never filed a claim for compensation nor sought an administrative determination of her eligibility for statutory compensation.[4] That the defendant's agents took the initiative in making these payments argues against the element of conscious choice that might give rise to an election on the part of the plaintiff. We would be reluctant to allow the defendant's unilateral decision to pay compensation to estop plaintiff from pursuing other remedies.

More troublesome is the fact that plaintiff has continued to accept compensation despite the contradictory theory of her tort claim. But we cannot draw from this fact

---

**3.** Moreover, *Wetzel, Britton,* and *Cardillo* were appeals from an administrative determination of the employee's eligibility for compensation. The scope of review was limited, and they were decided under the substantial evidence rule.

**4.** Had plaintiff obtained an administrative determination of her eligibility, that determination would have been *res judicata* of this proceeding; recovery under the Federal Tort Claims Act would have been foreclosed.

a conscious intent on the part of the plaintiff to give up her tort claim. It would be unreasonable to expect a plaintiff, to whom compensation benefits were volunteered, to refuse them when she had no recollection of how the accident occurred and she could not be certain of a future recovery in tort. Any apparent inconsistency on the part of the plaintiff will work no prejudice to the defendant. As plaintiff concedes, fairness would require that any recovery by her in the tort case should be reduced by the amount of compensation that she has already received. This reduction would prevent any double recovery in this case.[5] The elimination of the possibility of double recovery eliminates the justification for imposing an election. *See Twin City Federal Savings & Loan Ass'n v. Transamerica Ins. Co.*, 491 F.2d 1122, 1125 (8 Cir. 1974).

The concept of applying compensation payments to offset recovery in tort is not novel. The Supreme Court has endorsed this practice in cases where servicemen have been allowed to recover under the Federal Tort Claims Act for non-service-related injuries after they have collected veteran's benefits. *See United States v. Brown*, 348 U.S. 110, 111, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *United States v. Brooks*, 337 U.S. 49, 53–54, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). We think that the offset of compensation payments avoids any unjust enrichment of the plaintiff and renders inapplicable the doctrine of estoppel in this case.

*REVERSED AND REMANDED.*

**5.** We intimate no opinion as to what would be the proper course of action with respect to the compensation paid, if plaintiff in her tort action either was denied recovery or recovered less than the amount of compensation benefits already accepted by her.