Sharon Lee WRIGHT,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 81–1788.

United States Court of Appeals,
Sixth Circuit.

Argued March 31, 1983.

Decided Aug. 26, 1983.

As Amended Sept. 13, 1983.

Rehearing and Rehearing En Banc
Denied Nov. 28, 1983.

Michael T. Materna, Dwight Robinson (argued), Detroit, Mich., for plaintiff-appellant.

Leonard R. Gilman, U.S. Atty., Patricia Reeves, Ellen G. Ritteman (argued), Asst. U.S. Attys., Detroit, Mich., for defendant-appellee.

Before KEITH, KENNEDY and JONES, Circuit Judges.

KEITH, Circuit Judge.

On September 8, 1975, Sharon Lee Wright, plaintiff-appellant, became acutely ill. She was admitted to the Allen Park Veterans Administration Hospital where she was employed as a secretary. Physicians at the hospital treated her for a rup-

tured tubal pregnancy. Subsequently, Wright recovered and filed the present action under the Federal Tort Claims Act, 28 U.S.C. § 2675. Wright alleged that the physicians at the Veterans Administration Hospital performed the surgical procedures negligently. The district court ultimately held that the Federal Employees Compensation Act, 5 U.S.C. § 8101, was Wright's exclusive remedy. We reverse.

I.

On September 8, 1975, Sharon Lee Wright was performing her secretarial duties in the Psychiatry Department at the Veterans Administration Hospital in Allen Park, Michigan. At approximately 4 p.m. she began experiencing severe abdominal pain. A fellow employee transported her by wheelchair to the emergency room. Wright, a Jehovah Witness, was conscious and alert. She was not entitled to treatment at Allen Park Veterans Administration Hospital. Nonetheless, the hospital undertook to treat her. She refused to accept blood transfusions. At 7 p.m. Wright's parents arrived at the hospital. Wright's condition had worsened. She was conscious, but unable to communicate effectively. Wright's parents maintain that they requested that their daughter be transferred to a hospital which was better equipped to treat a young female with pregnancy complications. The medical staff, allegedly, rejected this request.

Later, Wright's parents confirmed that Wright's religious beliefs prevented her from receiving blood transfusions. Hospital personnel, nevertheless, elected to perform an exploratory laparotomy.[1] A ruptured tubal pregnancy with massive intra-abdominal hemorrhage was discovered. When complications developed Wright was placed on a respirator. The next morning, Wright agreed to submit to a blood transfusion. Several days later Wright was discharged from the hospital.

On August 16, 1977, Wright filed an administrative claim with the Veterans Ad-

---

**1.** An exploratory laparotomy occurs when physicians surgically open the abdomen to make a diagnosis.

ministration ("VA") under the Federal Tort Claims Act, 28 U.S.C. § 2675. The claim alleged, inter alia, that the respirator was improperly applied and operated. In fact, Wright maintained that the respirator damaged her trachea, vocal cords and pharynx. In addition, Wright complained that her abdomen was improperly sutured. Consequently, she had to undergo corrective surgery and a "tracheal resection and reconstruction". On May 24, 1978, the VA responded with a letter which stated that Wright's exclusive remedy was the Federal Employees Compensation Act, 5 U.S.C. § 8101. The VA based their determination on Wright's status as a working federal employee at the time of the onset of her injury. Wright apparently did not respond to this letter.

Instead, on August 18, 1978, Wright filed the present action in the United States District Court for the Eastern District of Michigan. Jurisdiction was asserted under the Federal Tort Claims Act, 28 U.S.C. § 2675. The complaint alleged that hospital personnel assumed, but subsequently violated the duty to provide competent medical care. In particular, Wright maintained that the application, operation, and removal of the respirator damaged her trachea, vocal cords and pharynx.

On November 14, 1979, Wright filed a claim for compensation under the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8101. In a letter dated February 19, 1980, a Department of Labor claims examiner explained that Wright's FECA claim was untimely. The claim could not be processed because it had not been filed within three years of the date of the injury. Significantly, however, the claims examiner stated as follows:

> In addition to the above, which absolutely precludes entitlement to benefits, the mere fact or coincidence that you happened to be at work when your medical emergency occurred would not entitle you to benefits. Your ruptured tubal pregnancy would be a pre-existing personal pathology which is not job-related and

which would be covered by use of leave and your personal health insurance.

A year later, a claims supervisor for the Department of Labor sent Wright a second letter which referred to Wright's pending action in the district court.[2] This second letter was sent approximately three months before the VA filed a motion to dismiss. It, too, confirmed that Wright's FECA claim was untimely. However, the letter concluded with the following assertion:

> If you are successful in proving any deleterious result of medical service furnished by the Veterans Administration, you would have been covered by and entitled to benefits under the Federal Employees Compensation Act had your claim been timely filed.

On May 11, 1981, the VA filed a motion to dismiss, alleging that the FECA was Wright's sole and exclusive remedy. On September 11, 1981, the district court agreed and dismissed the action. Wright appeals.

## II.

The FECA, 5 U.S.C. § 8101 *et seq.,* establishes a comprehensive program of workmen's compensation for government employees injured in work-related accidents. *Reep v. United States,* 557 F.2d 204, 207 (9th Cir.1977). The program is administered by the Secretary of Labor. He alone has the exclusive authority to "decide all questions arising under the FECA." 5 U.S.C. § 8145. To ensure uniformity, an action of the Secretary is not subject to judicial review by mandamus or otherwise:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—
> 1) final and conclusive for all purposes and with respect to all questions of law and fact; and
> 2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128.

The FECA is the exclusive remedy against the United States for an injury

**2.** The letter was dated February 7, 1981.

within its coverage. 5 U.S.C. § 8116(c). Injuries which are compensable under the FECA, therefore, cannot be compensated under other federal remedial statutes such as the Federal Tort Claims Act. *United States v. Demko,* 385 U.S. 149, 151 n. 1, 87 S.Ct. 382, 384 n. 1, 17 L.Ed.2d 258 (1966). Moreover, district courts lack subject matter jurisdiction to consider an action where there is a substantial question of FECA coverage. *Joyce v. United States,* 474 F.2d 215, 219 (3d Cir.1973); *Concordia v. United States Postal Service,* 581 F.2d 439, 442 (5th Cir.1978); *Reep v. United States,* 557 F.2d at 207. A substantial question of FECA coverage is generally present where the Secretary has undertaken an "action" to award or deny FECA benefits. *See Gill v. United States,* 641 F.2d 195 (5th Cir.1981).

The statutory test for coverage under the FECA is whether the employee was injured "while in the performance of his duty." 5 U.S.C. § 8102(a). Appellate courts which have interpreted these words of limitation have held that the injury must arise out of the special zone of danger created by an obligation or condition of employment. *See, e.g., O'Leary v. Brown-Pacific-Maxon,* 340 U.S. 504, 506–07, 71 S.Ct. 470, 471–72, 95 L.Ed. 483 (1951); *Bailey v. United States,* 451 F.2d 963, 967 (5th Cir.1971); *Avasthi v. United States,* 608 F.2d 1059, 1061 (5th Cir.1979); *Wallace v. United States,* 669 F.2d 947, 952 (4th Cir.1982). The two leading cases which have applied the zone of special danger analysis are *Bailey v. United States* and *Wallace v. United States.*

In *Bailey,* an off-duty civilian employee had driven one block from her place of employment on the main street of the Army base before she was injured in an automobile accident. The court held that there was no substantial question of FECA coverage presented even though the injury occurred on government property:

> At the time of the collision Mrs. Bailey had completed her work day; she had departed from the job site in her privately-owned automobile; and she was traveling home on a street which was apparent-

ly open to all persons authorized to be on the Army base. She was not under any supervision from her employer, and the driving of the automobile was not an activity connected to the usual hazards of laundry work. *See Walker v. United States,* D.Alaska, 1971, 322 F.Supp. 769. Absent any showing that the street traveled by Mrs. Bailey was a "zone of special danger" incident to her laundry employment, we hold that the location of the collision in this case was of small import and no substantial question of FECA coverage is raised by the fortuitous circumstance that the street was owned by the federal government.

*Id.* at 967.

■ The *Wallace* court also found no substantial question of FECA coverage despite the fact that the injury occurred during normal working hours on government property. Pursuant to a national swine flu immunization program, plaintiff voluntarily received a swine flu shot during normal working hours. The shot apparently was administered by the Public Health Service in a government building near where plaintiff worked. Subsequently, plaintiff contracted Guillain-Barre Syndrome. The court held that the injury had not occurred within the zone of special danger which was attendant to plaintiff's employment. The court stressed that the inoculation was not a condition of plaintiff's employment and that the shot could just as easily have been obtained at another location:

> [T]his court cannot see how a causal relationship between one's employment can be established based solely on the fact that the inoculation took place on federal premises. While agency interpretations of a statute the agency is charged with executing are entitled to considerable weight, *see New York State Department of Social Services v. Dublino,* 413 U.S. 405, 421, 92 S.Ct. 2507, 2517, 37 L.Ed.2d 688 (1973), we decline to follow the statutory interpretation now offered by the government because administrative policy statements such as FECA Memorandum 26–76 and ECAB opinions such as those

cited in footnote 8, *supra,* are inconsistent with other ECAB opinions and fly in the face of simple logic and relevant judicial precedent such as *Bailey.*

Harry Wallace took part in a national flu inoculation program by receiving a shot on the premises of his federal employer. He could just as easily have taken his shot at any number of other locations. His employment status was in no way conditioned on his participation in the inoculation program. To affirm the district court would require us to hold that, under these circumstances, Wallace was injured in "the performance of his duty," that the "injury arose out of and in the course of his employment," and that a causal relationship exists between his injuries and his employment. This we simply are unprepared to do. Wallace's voluntary decision to receive a flu shot on the premises of his employer rather than at his neighborhood school or elsewhere does not make his injury resulting from that shot employment-related and compensable under FECA. We conclude, therefore, that Wallace's injuries are clearly not compensable under FECA and that he may pursue his claim in federal court under the Swine Flu Act.

*Wallace,* 669 F.2d at 954.

The present case is analogous to *Bailey* and *Wallace.* Neither the ruptured tubal pregnancy nor the throat injuries were sustained while Wright was performing her duties as a secretary. The fortuitous circumstance that the preexisting tubal pregnancy manifested itself while Wright was on duty is not a sufficient relationship to establish coverage under the FECA.[3] *See Wallace,* 669 F.2d at 953–54. Indeed, the rupture could just as easily have occurred while Wright was off-duty. Thus, the present circumstances indicate that there is no causal connection between Wright's pregnancy and her employment as a secre-

tary at the Allen Park Veterans Administration Hospital.

Similarly, Wright did not sustain her throat injuries in the performance of her duties as a secretary. Wright received her injuries while she was off-duty acting in her capacity as a patient struggling to stay alive. Wright was not accountable to her employer. Nor was she required to obtain the treatment at the hospital as a condition of her employment. She, like the *Wallace* plaintiff, could just as easily have obtained competent medical care at any number of other locations. *Wallace,* 669 F.2d at 954. It was merely an unfortunate coincidence that Wright allowed herself to be treated at the hospital. Moreover, being injured by the negligent application and use of a respirator is not an expected consequence of being within the special zone of danger which surrounds secretarial positions at Veterans Administration hospitals.

Wright's throat injuries are analogous to *Dishman v. United States,* 93 F.Supp. 567 (D.Md.1950). There plaintiff sought an examination for a minor ear ailment at the Veterans Administration Hospital where he worked as a patient aide. Neither plaintiff nor the hospital was obligated to submit to or perform the examination. Nevertheless, the examination occurred. A small pimple was found in the ear. The examining physician subsequently poured carbolic acid in the ear to treat the condition. This treatment permanently damaged the ear. The court rejected the contention that FECA barred the action. The court reasoned that a compensable injury was not created where a government physician injured a federal employee who had voluntarily sought treatment for a noncompensable ailment. 93 F.Supp. at 571.

In sum, we hold that neither Wright's pregnancy nor her throat injuries arose out of the special zone of danger created by an obligation or condition of her employment. On the present record, there simply is not a substantial question of FECA coverage.[4]

---

**3.** We do not interpret FECA to compensate for every preexisting injury which manifests itself while a federal employee is on duty.

**4.** The letter sent to Wright by the claims supervisor for the Department of Labor does not create a substantial question of FECA coverage. Courts cannot review an "action of the

Therefore, the district court had jurisdiction to entertain the present Federal Tort Claims action.

### III.

█ Finally, even if Wright's pregnancy had been compensable under the FECA, the present action would not be barred. The dual capacity doctrine would have enabled Wright to bring the present action for her alleged throat injuries. That doctrine treats the employer as a third party outside the protections of the workmen's compensation statute under certain conditions. The test is as follows: "An employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." *See* 2A Larson, Workmen's Compensation Law 14–229, Section 72.81 (1982).

The dual capacity doctrine does not destroy the theoretical superstructure of workmen's compensation. Instead, the symmetry it imposes merely strengthens it. Workmen's compensation is premised on the idea of status. *Cudahy Packing Co. v. Parramore,* 263 U.S. 418, 423, 44 S.Ct. 153, 154, 68 L.Ed. 366 (1923). Workmen are entitled to compensation for injuries sustained in the performance of their duties. The compensation is based not upon any act or omission of the employer, but upon the existence of the employer-employee relationship. *Id.* The dual capacity doctrine merely allows the employee to sue his employer where the employer-employee relationship does not exist because the employer is acting in a second persona unrelated to his status as employer.

The dual capacity doctrine has been utilized in a number of contexts where employees have been injured while their relationship to their employers has been other than that of employer-employee. For ex-

ample, in *Panagos v. North Detroit General Hospital,* 35 Mich.App. 554, 192 N.W.2d 542 (1971), plaintiff, an employee of the defendant hospital, cut her mouth during lunch while eating a piece of pie she had purchased in the hospital's cafeteria. Plaintiff subsequently became disabled for fifteen weeks and received workmen's compensation benefits. After the plaintiff returned to work, she brought suit against her employer alleging negligence and breach of warranty in the sale of the pie. The court applied the dual capacity doctrine reasoning that the pie was furnished to the injured employee as a member of the consuming public and not solely as an employee. The court stated:

> Plaintiff's present case is based upon the vendor-vendee relationship. The whole theory of the cause of action has nothing to do with the fact that plaintiff also happened to be employed by the defendant. We see no need for plaintiff to first seek relief from the Workmen's Compensation Department when it is clear that the employee-employer relationship is unrelated to the cause of action.

*Id.* at 559, 192 N.W.2d 542. *See also Fletcher v. Harafajee,* 100 Mich.App. 440, 299 N.W.2d 53 (1980) (city policewoman injured while on duty and subsequently treated at city-owned medical center could sue city personnel who treated her).

The dual capacity doctrine was also applied in *Duprey v. Shane,* 39 Cal.2d 781, 249 P.2d 8 (1952). Plaintiff, a practical nurse, was injured while trying to prevent a patient from falling off the treatment table. Plaintiff subsequently sought her physician-employer's advice concerning the best treatment for the injury. The physician-employer, Dr. Shane, and his physician-employee, Dr. Harrison, both undertook to treat plaintiff. Each apparently gave plaintiff several chiropractic adjustments and manipulations. These adjustments and manipulations, unfortunately, aggravated the origi-

Secretary ... in allowing or denying" benefits. 5 U.S.C. § 8128. However, the only "action of the Secretary" which occurred in the present case involved the denial of consideration of

Wright's claim because it was untimely. The other suggestions contained in the letters from the Secretary of Labor are merely dicta which do not constitute an action of the Secretary.

nal injury. Plaintiff's condition worsened. Finally, plaintiff brought an action against her physician-employers. The principal question presented was whether the workmen's compensation statute barred the action. The California Supreme Court ruled that the physician undertook a "dual legal responsibility" when they elected to treat plaintiff's condition. The court, in a per curiam, held as follows:

> In treating the injury Dr. Shane did not do so because of the employer-employee relationship, but did so as an attending doctor, and his relationship to [plaintiff] was that of doctor and patient.... It is true that the law is opposed to the creation of a dual personality, where to do so is unrealistic and purely legalistic. But where, as here, it is perfectly apparent that the person involved—Dr. Shane—bore towards his employee two relationships—that of employer and that of a doctor—there should be no hesitancy in recognizing this fact as a fact. Such a conclusion, in this case, is in precise accord with the facts and is realistic and not legalistic. We conclude, therefore, that an employee injured in an industrial accident may sue the attending physician for malpractice if the original injury is aggravated as a result of the doctor's negligence, and that such right exists whether the attending doctor is the insurance doctor or the employer.

249 P.2d at 15. *See also Guy v. Arthur H. Thomas Co.*, 55 Ohio St.2d 183, 378 N.E.2d 488 (1978).

In the present case, the Veterans Administration Hospital had a dual capacity relationship with Wright. She was both an employee and patient of the hospital. Initially, the hospital was an employer supervising her work as a secretary. Later when the doors of the emergency room swung open, Wright's relationship to the hospital changed. She did not have to seek treatment for her ailment at the VA hospital. Indeed, it appears she could have obtained more competent medical care elsewhere. The hospital staff also was not obligated to treat her. Wright's status as employee did not automatically entitle her to treatment.

Nevertheless, hospital personnel elected to treat her.

The decision to treat Wright was based in part on her condition. In fact, the hospital personnel's apparent refusal to agree with her parents' request that Wright be transferred to another hospital only strengthens the inference that the decision to treat was based solely on a medical evaluation of the patient. Under the circumstances of the present case, the decision to treat established the doctor-patient relationship. After the doctor-patient relationship was established, Wright was injured by negligent medical care. Under these unique circumstances, we hold that the FECA would not prevent Wright from bringing an action for malpractice. The Federal Tort Claims action would not undermine the goals of the FECA because the employer-employee relationship is not the basis of the action.

Accordingly, the judgment of the district court is reversed. This action is remanded for further proceedings consistent with this opinion.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

Because I believe that the District Court properly held that there was a substantial question of FECA coverage, I respectfully dissent. As the majority notes, district courts lack subject matter jurisdiction to consider an action where there is a substantial question of FECA coverage.

The leading Supreme Court case on the scope of federal workers' compensation is *O'Leary v. Brown-Pacific-Maxon*, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951). In *O'Leary*, the death of a construction worker who reasonably attempted to rescue two drowning men (not co-employees) in a channel running in front of his employer's recreation facility, but off the employer's premises, was found to be compensable under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1978) (amended 1972). The Court stated that:

> Workmen's compensation is not confined by common-law conceptions of scope of

employment.... The test of recovery is not a causal relation between the nature of employment of the injured person and the accident.... Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the "obligations or conditions" of employment create the "zone of special danger" out of which the injury arose.

340 U.S. at 506–07, 71 S.Ct. at 471–72 (citations omitted).[1]

The effect of *O'Leary* is that an injury need not bear a "causal relation" to the employment or have been incurred while the employee was working for his employer's benefit in order to be compensable under federal statutory workers' compensation provisions. Most courts have refused to adopt any per se rules as to when an injury arises out of a "zone of special danger" created by "obligations and conditions" of employment. Nor would I adopt a "premises rule" and conclude that the fact that injuries occur on federal property is sufficient to raise a substantial question of coverage which must be decided by the Secretary. I agree with a majority of courts of appeals which have adopted the position that location of the injury is but one factor that is considered among a "totality of all relevant circumstances." *Concordia v. U.S. Postal Service*, 581 F.2d 439, 442 (5th Cir.1978); *Martin v. United States*, 566 F.2d 895 (4th Cir.1977); *Bailey v. United States*, 451 F.2d 963, 967–68 (5th Cir. 1971); *United States v. Udy*, 381 F.2d 455 (10th Cir.1967); *United States v. Browning*, 359 F.2d 937 (10th Cir.1966).

While examining the relevant circumstances it is important to observe that the "zone of special danger" that gave rise to Wright's injuries is the danger of improper treatment by VA medical personnel treating her for an emergency condition that arose while Wright was on duty. The personal, non-causal nature of Wright's condition was unknown at the time of her acute abdominal pains. Submission to emergency medical treatment at a government treatment facility where one is employed may reasonably be considered incident to federal employment at that facility, especially where the personal nature of the medical emergency is unknown at the time action must be taken. *See Mohr v. United States*, 184 F.Supp. 80 (N.D.Cal.1960); *Frieouf v. United States*, 183 F.Supp. 439 (N.D.Cal. 1960); *Leahy v. United States*, 160 F.Supp. 519 (E.D.N.Y.1958); *Berry v. United States*, 157 F.Supp. 317 (D.Or.1957).[2] That Wright would be treated there because she was an employee was foreseeable. And had her condition developed while she was off duty, she would not have been entitled to treatment at a VA hospital and thus would not have been exposed to the possibility of improper treatment by VA medical personnel. The condition of her employment, namely its location at the hospital, created the "zone of special danger" out of which the injury arose to a greater degree than did conditions of employment in *O'Leary* where the employee attempted to rescue two strangers and the only connection with his employment was that he was at a recreational facility (in Guam) provided by his employer when he made the rescue attempt.

This appears to be a difficult case because Wright's injuries to her throat and abdomen are remote in time, place and activity from her job as a secretary at the VA. The inherent risks of ectopic pregnancy, or other acute non-work related disorders, are not risks incidental to her employment. Furthermore, her presence at the VA at the time of her problem was not dictated by her

---

1. The language of the statute interpreted by the *O'Leary* Court was somewhat different from the language of the FECA. However, the *O'Leary* "zone of special danger" analysis has been adopted by courts construing the FECA. *E.g., Wallace v. United States*, 669 F.2d 947 (4th Cir.1982); *Avasthi v. United States*, 608 F.2d 1059 (5th Cir.1979); *Bailey v. United States*, 451 F.2d 963 (5th Cir.1971).

2. All these cases involved situations where an employee was reinjured in a government hospital or treatment facility where the employee was receiving treatment for an on-the-job injury.

employment but by pure chance. All of these factors suggest that her injuries were not incurred in the performance of her duties with the federal government. However, the question before us is not an ultimate determination on the merits but rather whether there is even a substantial compensation question under the FECA. Because workers' compensation statutes are intended to provide liberal coverage to protect employees, uncertainties are generally resolved in favor of coverage. *Martin, supra; Udy, supra.* There is sufficient uncertainty in the circumstances before us to present a substantial question of whether compensation would be allowed. In at least one instance federal workers' compensation has been awarded for malpractice by a government physician in connection with services rendered for a non-work related condition. In the case of *John B. Battey,* ECAB Doc. No. 73–124, decided October 10, 1974, a claimant was found eligible for FECA coverage for a tubercular condition that predated his government employment. Battey alleged that government personnel had negligently failed to discover evidence of the pre-employment tuberculosis in his pre-employment chest x-rays and that this condition was exacerbated by failure to treat it at an early stage. The Chief of the Claim Branch concurred in the award of compensation, stating that "[a]n employer should be liable for the deleterious effects of medical services furnished to employees. *Battey* at 3." It is reasonable to consider medical services provided as a factor of employment and as such to find coverage under the FECA. *Battey* is cited with approval for this proposition in *Scalia v. United States,* 475 F.Supp. 1040, 1043 (S.D.N.Y. 1979).

Several state decisions have also held that an employer is liable for medical treatment given for otherwise noncompensable conditions. These cases are collected in Larson, *Workmen's Compensation Law,* § 13.21, footnotes 89 and 91. These decisions support the conclusion that there is a substantial question of coverage.

The cases relied upon by the majority in Part II of its opinion are distinguishable from the present case. The employee in *Bailey, supra,* was injured on her way home from work in an automobile accident on a street that happened to be on an Army base. The employer was not exposed to any dangers other than those faced by any commuting non-government employee, and was not "on duty" in any sense at the time of the accident. Wright was on duty when she first suffered acute abdominal pains, which led to her exposure to malpractice.[3] The employees in *Wallace v. United States,* 669 F.2d 947 (4th Cir.1982) and *Dishman v. United States,* 93 F.Supp. 567 (D.Md.1950), both alleged injury during minor, routine medical procedures which the employees were free to have had performed somewhere else at their leisure.[4] Wright was not so free, being constrained by the fact that her emergency condition developed while she was on duty at the hospital.

The dual capacity doctrine discussed in Part III of the majority opinion has not been applied to federal workers' compensation laws. It appears to be incompatible with the "zone of special danger" analysis consistently followed by the federal courts in interpreting federal workers' compensation laws.

I would hold that a substantial compensation question exists because Wright was a federal employee who was on government property at her work station at the time her problem occurred; it was unknown at the time of her problem whether her acute abdominal pain was work-related or not (the personal nature of her problem was only determined subsequently); and, finally, Wright's treatment at the VA was directly attributable to her status as a federal employee coupled with her actual presence on the employer's premises at the time of the

---

**3.** *Martin, supra, Udy, supra,* and *Browning, supra,* cited by appellant Wright, also involved auto accidents and are similarly distinguishable.

**4.** Neither *Wallace, supra,* nor *Dishman, supra,* considered the *O'Leary* "zone of special danger" standard.

occurrence, since the VA does not ordinarily treat the general public. These latter factors seem to raise a substantial question of coverage which, when viewed in light of the statutory mandate that the Secretary of Labor make the initial determination and the case law mandate that FECA be liberally construed, indicate that the District Court did not err in this case.