**Franklin Scott GALLO, Plaintiff,**

v.

**The UNITED STATES DEPARTMENT OF STATE FOREIGN SERVICE GRIEVANCE BOARD, Defendants.**

**Civ. A. No. 91–F–1220.**

United States District Court, D. Colorado.

Oct. 30, 1991.

Dorothy C. Stone, Denver, Colo., J. Ba-
yard Young, John R. Riley, Montgomery
Little Young Campbell & McGrew, P.C.,
Englewood, Colo., for plaintiff.

Michael J. Norton, U.S. Atty., James W.
Winchester, Asst. U.S. Atty., Denver, Colo.,
for defendants.

1. All factual recitations in this Order are con-
tained in the pleadings and motions filed by the

## ORDER

SHERMAN G. FINESILVER, Chief
Judge.

THIS MATTER comes before the Court
on Defendant United States Department of
State Foreign Service Grievance Board's
Motion to Dismiss for failure to state a
claim under Fed.R.Civ.P. 12(b)(6). Defen-
dant also has moved for attorney's fees
under Fed.R.Civ.P. 11 ("Rule 11"). The
motion has been fully briefed by the liti-
gants. Jurisdiction is based on 22 U.S.C.A.
§ 4140 (West 1990). For the reasons stat-
ed below, Defendant's Motion to Dismiss is
GRANTED. Defendant's request for at-
torney's fees pursuant to Rule 11 is DE-
NIED.

### I.

### BACKGROUND

Plaintiff Franklin Scott Gallo ("Gallo")
became a Special Agent with the Bureau of
Diplomatic Security for the United States
Department of State in July 1985.[1] After
volunteering for a short tour of duty in the
Sudan, Gallo returned to the Sudan to be-
come the Assistant Regional Security Offi-
cer (ARSO) at the United States Embassy
in Khartoum, the Sudanese capital, on
April 16, 1986.

Sudan is a country where tropical dis-
eases such as malaria are common. For
this reason, United States Government per-
sonnel in the Sudan are advised to take the
anti-malarial drug chloroquine as a precau-
tionary measure. Certain side effects may
result from the prolonged use of chloro-
quine, including blurred vision. After one
and one-half years of continuous use of
chloroquine, Gallo began to develop blurred
vision. On September 20, 1987, Gallo dis-
continued his use of chloroquine, and his
vision returned to normal.

On February 20, 1988, Gallo began to
feel sluggish. Feeling progressively
worse, Gallo went to see the Foreign Ser-

parties.

vice Nurse Practitioner, James Messiter ("Messiter"), on February 22, 1988. Messiter was the only American medical person stationed at the Khartoum Embassy. Messiter diagnosed an upper respiratory infection and prescribed aspirin to Gallo.

By February 24, 1988, Gallo's condition deteriorated to the point where Messiter took Gallo into his home and treated him with IV fluids, chloroquine, and aspirin. Messiter allegedly failed to take an adequate medical history and failed to include quinine in the treatment. On February 25, 1988, Messiter began administering Stadol, a pain-killer and sedative, to Gallo. It is further alleged that Messiter misrepresented Gallo's condition to the Ambassador.

On February 26, 1988, a Sudanese physician, Dr. Assadour, was called to check on Gallo's condition. Dr. Assadour advised that Gallo be evacuated immediately. Just prior to his evacuation to Weisbaden Hospital in West Germany on February 27, 1988, Gallo lapsed into a coma. Gallo came out of the coma on March 4, 1988. During his stay at Weisbaden, doctors concluded that Gallo had developed other diseases. Gallo received further treatment, including several surgical procedures, following his return to the United States.

Plaintiff filed a grievance with the United States Department of State Foreign Service Grievance Board ("Board") on May 30, 1991. The grievance alleged that Messiter had been negligent, and that the State Department had been negligent in hiring and training Messiter for the position in Khartoum. On June 11, 1991, the Board issued a ruling that dismissed Gallo's grievance for lack of jurisdiction. *In the Matter Between F. Scott Gallo, Grievant and The Department of State*, No. G–91–029–STATE–21 (June 11, 1991). Gallo filed a Petition for Review of Order of the Foreign Service Grievance Board on July 16, 1991.

## II.

### STANDARD OF REVIEW

Defendant alleges that Plaintiff has failed to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Under Fed.R.Civ.P. 8(a)(2), plaintiffs are required to offer a short and plain statement of the claims against defendants. This requirement guarantees that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957); *TV Communications Network, Inc. v. ESPN, Inc.*, 767 F.Supp. 1062, 1069–70 (D.Colo.1991).

A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) unless plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Tri-Crown, Inc. v. American Fed. Sav. & Loan Ass'n*, 908 F.2d 578, 582 (10th Cir. 1990); *Shoultz v. Monfort of Colo., Inc.*, 754 F.2d 318, 321 (10th Cir.1985); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984); *Federal Deposit Ins. Corp. v. Wise*, 758 F.Supp. 1414, 1416 (D.Colo.1991); *Golf Shots, Inc. v. Time Warner, Inc.*, No. 90–F–2131, slip op. at 2 (D.Colo. January 10, 1991); *Trustees v. Lillard & Clark Const. Co.*, No. 90–F–507, slip op. at 3 (D.Colo. November 27, 1990); *Strizich v. Mountain States Tel. and Tel. Co.*, No. 90–F–1660, slip op. at 1, 1990 WL 303164 (D.Colo. October 24, 1990); *Sullivan v. Boettcher & Co.*, 714 F.Supp. 1132, 1134 (D.Colo.1989); *Watters v. Pelican Int'l, Inc.*, 706 F.Supp. 1452, 1458 (D.Colo.1989). The court must accept all factual allegations as true and must draw all reasonable inferences in favor of the nonmoving party. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1148 (10th Cir.), *cert. denied*, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989); *Shoultz*, 754 F.2d at 321; *Sullivan*, 714 F.Supp. at 1134; *Watters*, 706 F.Supp. at 1458. All plaintiffs' pleadings must be liberally construed. *Swanson*, 750 F.2d at 813; *Wise*, 758 F.Supp. at 1416. As long as plaintiffs offer evidence in support of a legally recognized claim for relief, motions to dismiss must be denied. *Hiatt v. Schreiber*, 599 F.Supp. 1142, 1145 (D.Colo. 1984). *Wise*, 758 F.Supp. at 1416. We find that Plaintiff fails to state a claim upon which relief can be granted.

## III.

## EXCLUSIVE REMEDY UNDER FEDERAL WORKERS COMPENSATION STATUTE

■ The Board's jurisdiction extends only to "grievances" within the meaning of the Foreign Service Act. *See* 22 U.S.C.A. §§ 4135–4137 (West 1990). The term "grievance" is defined as follows:

[A]ny act, omission, or condition subject to the control of the Secretary which is alleged to deprive a member of the Service who is a citizen of the United States of a right or benefit authorized by law or regulation or which is otherwise a source of concern or dissatisfaction to the member.

22 U.S.C.A. § 4131(a)(1) (West 1990). None of the listed examples of "grievances" include claims for negligent medical treatment and negligent hiring and training. Specifically excluded from the definition of "grievances" are matters where relief is afforded by some other provision of law, regulation, or Executive Order. 22 U.S.C.A. §§ 4131(b)(4) and 4139(a) (West 1990).

■ The Federal Employees Compensation Act (FECA), 5 U.S.C.A. § 8101, *et seq.*, provides that the statutory remedy is exclusive in damages actions for the "injury or death of an employee." 5 U.S.C.A. § 8116(c) (West 1980 & Supp.1991). Courts recognize, however, that FECA's exclusivity provision applies only to compensatory damages actions for job-related physical injuries. *Lawrence v. United States*, 631 F.Supp. 631, 636–37 (E.D.Pa.1982). The FECA exclusivity provision does not bar actions for mental suffering, humiliation, embarrassment, or loss of employment. *Id.; Sullivan v. United States*, 428 F.Supp. 79, 81 (E.D.Wis.1977).

Here, Plaintiff's claim relates solely to physical injuries suffered while stationed at a foreign embassy. We conclude that *Lawrence* and *Sullivan* are inapposite to the instant case.

In *Sanders v. United States*, 387 F.2d 142, 143 (5th Cir.1967), the court held that the exclusivity provision of 5 U.S.C.A. § 8116(c) prevented a federal employee from maintaining an action under the Federal Tort Claims Act. Plaintiff alleged that government doctors provided negligent medical treatment of injuries suffered during the course of his government employment. *Id.*

■ Plaintiff concedes the holding in *Sanders*, but asserts that the "dual capacity doctrine" creates an exception to FECA's exclusivity provision. We disagree.

The Sixth Circuit adopted the dual capacity doctrine in *Wright v. United States*, 717 F.2d 254, 259 (6th Cir.1983). In *Wright*, Plaintiff was a secretary for the Veterans Administration. *Id.* at 255. Plaintiff, who was pregnant, experienced severe abdominal pains while at work and was taken to the Veterans Administration Hospital. Plaintiff suffered a ruptured tubal pregnancy, as well as throat injuries allegedly caused by the hospital's negligence. *Id.* at 256. The court held that a separate action could be maintained, noting:

[A]n employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes a separate legal person.

*Id.* at 259 (*citing* 2A Larson, *Workmen's Compensation Law* § 72.81, at 14–229 (1982)).

Most courts, however, have rejected the dual capacity doctrine as incompatible with FECA. *See Votteler v. United States*, 904 F.2d 128, 130 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990); *Wilder v. United States*, 873 F.2d 285, 288–29 (11th Cir. 1989); *Schmid v. United States*, 826 F.2d 227, 229–30 (3d Cir.1987). In rejecting the dual capacity doctrine, courts frequently cite to *Balancio v. United States*, 267 F.2d 135, 138 (2d Cir.1959), where Judge Learned Hand wrote that in enacting FECA "Congress meant that, whenever 'compensation' was available to a Federal employee, it was to be his only remedy."

1482

The Sixth Circuit strictly limited the *Wright* case to its facts in *McCall v. United States*, 901 F.2d 548, 551 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 580, 112 L.Ed.2d 585 (1990). Referring to the "unique circumstances" in *Wright,* the court noted that the injuries suffered by the plaintiff in *Wright* were *"not work-related." McCall,* 901 F.2d at 551 (original emphasis).

The Tenth Circuit has not addressed the applicability of the dual capacity doctrine to the FECA exclusivity provision. We believe that the Tenth Circuit would follow the majority of circuits that have addressed this issue and reject the dual capacity doctrine.

■ If the Tenth Circuit were to adopt the dual capacity doctrine, we conclude that the doctrine would not apply in this case. The Sixth Circuit has applied the doctrine only in "unique circumstances" that clearly were "not work-related." *McCall,* 901 F.2d at 551. In this case, Plaintiff's presence in the Sudan made him susceptible to contracting malaria. Plaintiff went to the Sudan strictly on account of his job with the United States Embassy. Construing the facts in a light most favorable to Plaintiff, we find that Plaintiff's exposure to malaria was work-related. Consequently, Plaintiff could not satisfy the requirements of the dual capacity doctrine. Accordingly, Defendant's Motion to Dismiss is GRANTED.

## IV.

### ATTORNEY'S FEES

■ Defendant asserts that an award of attorney's fees under Rule 11 is proper in this case. We disagree.

To avoid the imposition of Rule 11 sanctions, an attorney need only assert, after reasonable inquiry into the facts and the law, a "good faith argument for the extension, modification, or reversal of existing law." This standard has been met in this case.

No authoritative Tenth Circuit case had addressed the issue in this case. Cases in other circuits generally favored the Defendant's position. The Sixth Circuit in *Wright,* 717 F.2d at 259, however, applied the dual capacity approach. Relying on *Wright,* Plaintiff raised a good faith argument for the adoption of the dual capacity doctrine by the Court and made a colorable claim that the doctrine applied to the facts alleged by Plaintiff. Accordingly, we conclude that an award of attorney's fees is not warranted in this case.

## V.

### ORDER

ACCORDINGLY it is ordered that:

1) Defendant's Motion to Dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is GRANTED.

2) Defendant's request for attorney's fees pursuant to Fed.R.Civ.P. 11 is DENIED.