RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0143p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

GARY EDWARD WILLIAMSON,
　　　　　　　　*Plaintiff-Appellee/Cross-Appellant*,

　　　　　*v.*

UNITED STATES OF AMERICA,
　　　　　　　　*Defendant-Appellant/Cross-Appellee.*

Nos. 16-5979/6105

———————

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:12-cv-00334—Joseph M. Hood, District Judge.

Argued:  March 16, 2017

Decided and Filed:  July 10, 2017

Before:  BOGGS, ROGERS, and COOK, Circuit Judges.

———————

## COUNSEL

**ARGUED:**  Caroline D. Lopez, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant/Cross-Appellee.  Jerome P. Prather, GARMER & PRATHER, PLLC, Lexington, Kentucky, for Appellee/Cross-Appellant.  **ON BRIEF:**  Caroline D. Lopez, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant/Cross-Appellee.  Jerome P. Prather, William R. Garmer, GARMER & PRATHER, PLLC, Lexington, Kentucky, for Appellee/Cross-Appellant.

———————

## OPINION

———————

　　ROGERS, Circuit Judge.  After recovering what amounted to workers' compensation benefits under the Federal Employees' Compensation Act (FECA) for injuries incurred as a

postal worker, plaintiff Gary Williamson sought damages under the Federal Tort Claims Act (FTCA) for medical malpractice on the part of the Department of Veterans Affairs in the treatment of those injuries. Liability under FECA, however, is "exclusive" of "all other liability of the United States" to the employee "under a Federal tort liability statute." 5 U.S.C. § 8116(c) (2012). Because this exclusion applies broadly even when a work-related injury has been negligently treated by an entirely non-work-related federal hospital, plaintiff Williamson may not recover under the FTCA.

At the end of September or the beginning of October 2009, Gary Williamson, an Army veteran and U.S. postal worker, began experiencing pain in his right foot. At that time, he was a mail carrier for the U.S. Postal Service (USPS) in Lexington, Kentucky. He usually worked a walking route, walking up to eight miles per day on the job. He was also doing other physical activity around that time, including running and CrossFit, which could have contributed to his injury.

Williamson first visited the VA Emergency Department (VA ED) for his foot pain on October 26, 2009. The treating physician took X-rays and diagnosed Williamson with a sprain, but at trial, Williamson's medical expert testified that the October 26 X-rays show a navicular fracture in Williamson's right foot. Williamson next visited the VA ED on November 27, 2009, after stepping in a hole along his mail route and twisting his ankle. Again, X-rays were taken, and again the treating physician found no fracture.

Williamson's pain persisted after a third visit to the VA in December. Later in December, Williamson's primary care doctor referred him to a podiatrist at the VA. On January 20, 2010, the podiatrist diagnosed Williamson with a navicular fracture in his right foot and prescribed "a CAM walker—a removable boot used to offload pressure from a patient's foot." Williamson's medical expert testified that this treatment plan violated the standard of care for treating a navicular fracture, which is six weeks of no weight-bearing in a cast. About one week later, Williamson applied for FECA benefits pursuant to his USPS employment, listing the tripping incident as the "cause of injury."

When Williamson did not show improvement in March, the VA podiatrist recommended surgery.  The podiatrist performed an unsuccessful surgery on April 6 and a second surgery on April 21.  Williamson continued to experience pain throughout the summer of 2010.  In August, he visited a non-VA orthopedist, who referred him to an orthopedic surgeon at the University of Kentucky.  The surgeon performed surgery in August 2010, which was successful, and a follow-up surgery in October 2013.  Williamson still has lingering pain from his foot injury.

As noted, Williamson applied for benefits under FECA about two months after the November 2009 incident—when he tripped in a hole on his mail route.  He eventually received a total of $127,155.12 in FECA benefits—"$79,379.66 in temporary total disability net compensation from March 20, 2010[,] through October 25, 2012"; $27,801.27 for medical expenses; and $19,974.19 as a lump-sum "schedule award."

Williamson filed the present suit against the United States under the FTCA on November 1, 2012.  He claimed the VA was negligent in mistreating him during the October, November, and December visits, in failing to prescribe him non-weight-bearing treatment after the January diagnosis, and in performing the April surgeries.  In response, the Government filed a motion for summary judgment, arguing that, under FECA's exclusive-remedy provision, 5 U.S.C. § 8116(c), when the Secretary of Labor has granted FECA benefits to a federal employee for a work-related injury, the employee may not then sue the United States in tort over the injury.

The district court denied the Government's motion for summary judgment.  *See Williamson v. United States*, No. 5:12-cv-334-JMH, 2013 WL 4785689, at *6 (E.D. Ky. Sept. 5, 2013).  In doing so, the court recognized that its decision turned on two relevant Sixth Circuit cases: *Wright v. United States*, 717 F.2d 254 (6th Cir. 1983), and *McCall v. United States*, 901 F.2d 548 (6th Cir. 1990).  An alternative analysis in *Wright* relied on the dual-capacity doctrine—under which an employee may sue his employer in tort over an injury after receiving workers' compensation benefits for the injury if the employer incurred tort liability while acting in a persona independent from its status as employer—as an exception to FECA's exclusive-remedy provision.  *Wright*, 717 F.2d at 259.  Seven years later, faced with circumstances similar to those presented in *Wright*, we held in *McCall* that a federal-employee plaintiff was barred

from suing the United States for medical malpractice that aggravated an injury she had suffered at work after she had been awarded FECA benefits for the initial injury. *McCall*, 901 F.2d at 552. In so holding, we expressly declined to apply the dual-capacity doctrine described in *Wright*, reasoning that *Wright*'s alternative holding is limited to the "unique circumstances" of that case. *Id.* at 551. In denying the Government's motion for summary judgment, the district court reasoned that Williamson's situation resembles that in *Wright* more closely than the facts of *McCall*, and held that the dual-capacity doctrine allowed Williamson's tort suit to proceed, despite his FECA coverage. *See Williamson*, 2013 WL 4785689, at *3–6. The court recognized, however, that *Wright*'s analysis conflicts with that employed by most courts, which "have either rejected the [dual-capacity] doctrine or found it inapplicable." *Id.* at *5.

After a bench trial, the district court concluded that the VA was negligent in failing to diagnose Williamson's fracture on December 4, 2009, *see Williamson v. United States*, 184 F. Supp. 3d 523, 530 (E.D. Ky. 2016); in failing to prescribe non-weight-bearing treatment in January 2010, *id.* at 532; and in performing the April 6, 2010 surgery, *id.*[1] The Government now appeals the district court's decision to allow the FTCA suit to continue.

The plain text of FECA's exclusive-remedy provision precludes Williamson's FTCA suit. FECA is the federal government's workers' compensation scheme. *Wright*, 717 F.2d at 256. Like most such statutes, FECA creates a quid pro quo—federal employees receive compensation for work-related injuries without having to prove fault, and in exchange, they lose the right to sue their government employer in tort. *McCall*, 901 F.2d at 550 (citing *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983)). The statute's exclusive-remedy provision reads:

---

[1]Before trial, the district court ordered that Williamson's damages, if any, would be offset by the value of the benefits he had already received from the United States under TRICARE and FECA. *Williamson v. United States*, No. 5:12-cv-334-JMH-REW, 2015 WL 3734153, at *4 (E.D. Ky. June 15, 2015). The court ended up awarding Williamson $108,529.64 in medical expenses, $129,405.91 in past lost wages, and $120,000 for pain and suffering. *Williamson*, 184 F. Supp. 3d at 534. After a deduction of $133,601.16 based on Williamson's TRICARE and FECA benefits, the total damage award was $224,334.39. *Id.* In his cross-appeal, Williamson argues that the court should not have included the $19,974.19 scheduled award or temporary disability payments from July 2012 to October 2012 in the damages offset, as those benefits were not duplicated in his damage award. However, because FECA precludes Williamson from receiving any tort damages, we do not reach this issue.

The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee . . . because of the injury or death . . . under a Federal tort liability statute.

5 U.S.C. § 8116(c). Here, the Secretary of Labor concluded that Williamson's foot fracture was work related and subject to FECA coverage, and a federal court may not second-guess that determination, *see* 5 U.S.C. § 8128(b); *Wright*, 717 F.2d at 257. Thus, under § 8116(c), the United States is immune from any further liability arising "because of" Williamson's foot injury. As a fundamental tort principle, injury caused by medical malpractice in the treatment of a previous, negligently caused injury is proximately caused by—and therefore occurs "because of"—the original underlying negligence. *See, e.g.*, Restatement (Second) of Torts § 457 cmt. a (Am. Law Inst. 1965). As Learned Hand explained, the common-law negligence rule is that "the initial wrong is the cause of all that follows, even when there has intervened a succeeding negligent act that produced the aggravation." *Balancio v. United States*, 267 F.2d 135, 137 (2d Cir. 1959). Applying that principle, the VA's negligence occurred because of Williamson's workplace injury and therefore, under FECA's exclusive-remedy provision, cannot subject the United States to liability.

Our alternative reliance on the dual-capacity doctrine in *Wright v. United States* does not compel a different result. *Wright* involved a secretary at a VA hospital. While at work, the secretary suffered a ruptured tubal pregnancy, which the VA hospital treated her for, including putting her on a respirator. After she was discharged, the secretary sued the United States under the FTCA, alleging medical malpractice in the VA's application and operation of the respirator. In response, the Government argued that, because the secretary's initial injury occurred at work, FECA provided her only redress. We held that the secretary was not entitled to FECA coverage for either the pregnancy-related injury or her throat injury. *See Wright*, 717 F.2d at 258. We reasoned that "[n]either the ruptured tubal pregnancy nor the throat injuries were sustained while [the secretary] was performing her" work-related duties. *Id.* Thus, there was no substantial question of FECA coverage to bar the tort suit. *Id.* Then, we went on to reason in the alternative that "even if [her] pregnancy had been compensable under the FECA, the present action would not be barred." *Id.* at 259. We relied on the dual-capacity doctrine: "The dual

capacity doctrine merely allows the employee to sue his employer where the employer-employee relationship does not exist because the employer is acting in a second persona unrelated to his status as employer." *Id.* When applying the doctrine to the facts of the case, we recognized that the federal government was acting as the secretary's doctor, not her employer, when it negligently treated her. *Id.* at 260. Thus, we concluded that "FECA would not prevent [her] from bringing an action for malpractice." *Id.*

Viewing *Wright*'s alternative reasoning in isolation, the same logic might apply here to allow Williamson's tort suit to proceed. But in *McCall* we limited *Wright* to its primary holding, and effectively abandoned the dual-capacity doctrine as unnecessary to our decision in *Wright*. *McCall* involved a civilian employee who worked for the federal government as a contract specialist on an Air Force base. The base hospital treated the employee after she fell and fractured her hip at work. After receiving FECA benefits as a result of the injury, the employee sued the United States under the FTCA for medical malpractice during the military hospital's treatment of her hip, which aggravated the injury. We held that the employee's FTCA suit was barred, because FECA provided the exclusive remedy for her initial, work-related injury and the "additional injuries caused by negligent treatment of the first." *McCall*, 901 F.2d at 550. We rejected the employee's reliance on the dual-capacity doctrine:

> *Wright*, we believe, is distinguishable. In that case, the plaintiff was injured while at work, but her injury . . . was *not work-related*. . . . Another distinguishing factor is that Wright's primary malpractice complaint was that improper use of a respirator damaged her trachea, an injury quite distinct from the one that brought her to the hospital in the first place. . . . McCall's case is plainly different from the facts in *Wright* . . . . McCall's initial injury was clearly suffered in the performance of her duties. The alleged malpractice injury was closely related to the initial injury. This case also differs from *Wright* in that there has been found to be FECA coverage involved.

*Id.* at 551.

Viewed solely through the lens of the dual-capacity doctrine, the outcomes in *Wright* and *McCall* appear to contradict one another. If the secretary in *Wright* could sue the United States in tort when the Government was acting as her doctor, regardless of FECA coverage, why should the employee in *McCall* be barred from suing the United States for its negligence in treating her

FECA-covered injury? This inconsistency arises from the fact that we did not rely on the dual-capacity portion of *Wright*'s reasoning to reach our decision in *McCall*. Instead, our reasoning in *McCall* reflects *Wright*'s primary holding, under which, because the secretary did not sustain her initial injury or her malpractice-induced trachea injury while performing her duties as a federal employee, her tort suit did not pose a substantial question of FECA coverage, *see Wright*, 717 F.2d at 258. In turn, because there was no substantial question of FECA coverage, FECA's exclusive-remedy provision did not bar the secretary's tort suit. *Id.* We applied the same line of reasoning in *McCall* to reach the opposite result: because the employee *did* sustain her initial injury while performing her duties as a federal employee, and because the following, malpractice-induced injury was "closely related" to the first, the employee's tort suit posed a substantial question of FECA coverage. *See McCall*, 901 F.2d at 551. Thus, FECA's exclusive-remedy provision barred the employee's tort suit. *Id.* at 551–52. By using *Wright*'s primary holding and declining to rely on the dual-capacity doctrine, we effectively held in *McCall* that *Wright* is correct for its primary holding and not because of its alternative reasoning.[2] *McCall* therefore significantly undermines the precedential value of *Wright*'s alternative holding, and thus the entire dual-capacity doctrine, as it applies to FECA. Thus, Williamson cannot now rely on the dual-capacity doctrine to overcome the plain terms of FECA's exclusive-remedy provision, which precludes his FTCA suit. FECA is Williamson's sole redress for his foot fracture and the VA's negligence in diagnosing and treating the fracture.

Every other court of appeals to have examined the issue has similarly held that the dual-capacity doctrine does not create an exception to FECA's exclusive-remedy provision. *See Spinelli v. Goss*, 446 F.3d 159, 161 (D.C. Cir. 2006); *Elman v. United States*, 173 F.3d 486, 492 (3d Cir. 1999); *Votteler v. United States*, 904 F.2d 128, 130–31 (2d Cir. 1990); *Wilder v. United States*, 873 F.2d 285, 288–89 (11th Cir. 1989) (per curiam); *Vilanova v. United States*, 851 F.2d 1, 7 n.24 (1st Cir. 1988); *see also Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995) (per curiam); *Balancio*, 267 F.2d 135.

---

[2]This analysis comports with how we interpreted *McCall*'s treatment of *Wright* in *Saltsman v. United States*, 104 F.3d 787 (6th Cir. 1997): "The dual-capacity doctrine appears merely to represent a rewording of the standard inquiry under FECA of whether an employee suffered his injuries 'while in the performance of his duty.'" *Id.* at 791 n.7 (citing *McCall*, 901 F.2d at 551).

The judgment of the district court is reversed, and the case is remanded for proceedings consistent with this opinion.